UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES DREYFUSS,<br><br>             Plaintiff,<br><br>-against-<br><br>ETELECARE GLOBAL SOLUTIONS-US, INC.,<br><br>             Defendant. | 08 CV 1115 (RJS) |

**DEFENDANT ETELECARE GLOBAL SOLUTIONS-US, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION
OR, IN THE ALTERNATIVE, STRIKE PLAINTIFF'S DEMAND FOR JURY TRIAL**

LITTLER MENDELSON, P.C.
Andrew P. Marks (AM 0361)
Deke W. Bond (DB 0349)
885 Third Avenue
New York, New York 10022-4834
(212) 583-9600

Attorneys for Defendant

TABLE OF CONTENTS

PAGE

INTRODUCTION ..............................................................................................................................1

NATURE OF CLAIMS AND SUMMARY OF ARGUMENT.........................................................1

ARGUMENT ....................................................................................................................................3

    I.    There is a Written Agreement to Arbitrate .........................................................4

        A.    Plaintiff Expressly Agreed in Writing to Arbitrate His Claims.................4

        B.    Plaintiff's Failure to Return the Complete Agreement to eTelecare is Immaterial ...........................................................................4

            (1)    The Arbitration Provision Plaintiff Signed and Returned to eTelecare, Standing Alone, Constitutes a Binding Agreement to Arbitrate ......................................................5

            (2)    The Absence of Specific Arbitration Procedures Does Not Defeat the Parties' Agreement to Arbitrate..................................6

        C.    Although the FAA Empowers the Court to Select the Arbitrator, Who Resolves Outstanding Procedural Issues, Sufficient Evidence Exists to Infer Those Missing Procedural Provisions or, Alternatively, the Court May Require Plaintiff to Negotiate Those Provisions in Good Faith ..........................................................8

        D.    The Arbitration Agreement Is Binding Not Withstanding eTelecare's Failure to Sign It................................................................10

    II.    Plaintiff's Claims Fall Within the Scope of His Arbitration Agreement.............10

    III.    Plaintiff's Statutory Claims Are Arbitrable ........................................................10

    IV.    Plaintiff's Demand For a Trial By Jury Should Be Stricken...............................11

CONCLUSION ..............................................................................................................................12

## INTRODUCTION

Defendant eTelecare Global Solutions-US, Inc. ("eTelecare"), by its attorneys, Littler Mendelson, P.C., respectfully submits this memorandum of law in support of its motion to compel arbitration or, in the alternative, strike Plaintiff's demand for a jury trial.

The parties entered into a written agreement to arbitrate the very claims Plaintiff asserts in this action. Under federal law, the existence of an agreement to arbitrate mandates that the action be dismissed and that Plaintiff be compelled to bring his claims in an arbitral forum. Even if the parties' arbitration agreement were to be disregarded (and there is no basis for doing so), Plaintiff's jury demand should be stricken because he expressly waived his right to a jury trial as to all claims against eTelecare.

## NATURE OF CLAIMS AND SUMMARY OF ARGUMENT

This action is based on an alleged failure to pay sales commissions. (*See* Complaint ¶ 1, Exhibit A to the Declaration of Andrew P. Marks dated May 22, 2008 ("Marks Dec.").) Plaintiff is a former outside sales employee of eTelecare. (*Id.* at ¶ 5.) His employment with eTelecare was contingent upon, among other things, his execution of a "Mutual Agreement to Arbitrate Claims." (*See* Offer of Employment dated March 18, 2004, Exhibit A to the Declaration of Mary Sculley dated May 9, 2008 ("Sculley Dec.").)

On July 9, 2004, Plaintiff executed the "Mutual Agreement to Arbitrate Claims" and faxed the first and last pages of the Agreement to eTelecare. (Scully Dec., ¶ 8, Exh. F.) The first page of that Agreement provided, in pertinent part, that "the Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my employment, that the Company may have against me or that I may have against the Company .... The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; [and] claims for any breach of contract

or covenant (express or implied) ...." (*Id.*)[1] The last page of the Agreement contained Plaintiff's signature under the following text:

> I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.
>
> I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

(*Id.*)

Plaintiff's employment with eTelecare terminated in April 2007. (Complaint, ¶ 5). In February 2008, he commenced this action alleging "willful failure to pay employment wages in the form of sales commissions." (*Id.*, ¶ 1.) As shown herein, Plaintiff must be compelled to arbitrate his claims because he entered into a broad arbitration agreement with eTelecare, and his claims fall squarely within the scope of that agreement. It is firmly established that arbitration clauses contained in private employment agreements are valid and enforceable, and that the statutory and other claims asserted in this action are arbitrable. Accordingly, under applicable law, the agreement is binding and Plaintiff must be compelled to arbitrate his claims in this action. Moreover, even if Plaintiff were not compelled to arbitrate, his jury demand should be stricken because he unequivocally waived his right to a jury trial.

---

[1] eTelecare's standard "Mutual Agreement to Arbitrate" in 2004 provides for arbitration under the auspices of the American Arbitration Association ("AAA") or Judicial Arbitration & Mediation Services ("JAMS"). (*See* Sculley Dec., ¶ 5, Exh. C.)

2

## ARGUMENT

## THE FEDERAL ARBITRATION ACT MANDATES
## THE ENFORCEMENT OF PLAINTIFF'S AGREEMENT TO ARBITRATE

The Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements, reflecting the federal policy strongly favoring arbitration as an alternative dispute resolution process. 9 U.S.C. § 1, *et seq*. *See also Gold v. Deutsche Bank*, 365 F.3d 144, 147-48 (2d Cir. 2004); *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (per curiam); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995). The Act "leaves no place for the exercise of discretion by a district court," rather it mandates that district courts shall order the parties to arbitrate those claims to which they agreed. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987).

The Second Circuit has articulated four criteria for determining whether to compel arbitration: (1) whether there is an agreement to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable; and (4) if only some of the claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration. *Genesco*, 815 F.2d at 844-52. *See also Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 75-76 (2d Cir. 1998).

In this case, the Second Circuit's criteria for arbitrability are easily met. Therefore, the Court must dismiss or stay Plaintiff's claims in favor of arbitration. *See* 9 U.S.C. §§ 3, 4. *See also WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (district court "must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceedings.").

I.   **There is a Written Agreement to Arbitrate**

   A.   **Plaintiff Expressly Agreed in Writing to Arbitrate His Claims**

Plaintiff expressly and unequivocally agreed in writing to arbitrate "all claims or controversies ('claims'), past, present and future, whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company or against its officers, directors, employee or agents in their capacity as such or otherwise." (Sculley Dec., ¶ 8, Exh. F.) Plaintiff does not deny that he executed and submitted to eTelecare the portion of the "Mutual Agreement to Arbitrate" that contained the above-quoted arbitration provision, thus evidencing his intent and agreement to arbitrate. (Marks Dec. Exh. B).[2] Therefore, it cannot seriously be disputed that there was a valid agreement to arbitrate between Plaintiff and eTelecare. *See Oldroyd*, 134 F.3d at 74-76 (arbitration clause contained in employment agreement constitutes valid agreement to arbitrate); *Martin v. SCI Management, L.P.*, 296 F. Supp.2d 462, 466-67 (S.D.N.Y. 2003) (same); *Mildworm v. Ashcroft*, 200 F. Supp.2d 171, 176-77 (S.D.N.Y. 2002) (same); *Design Strategy Corp. v. Nghiem*, 14 F. Supp.2d 298, 302 (S.D.N.Y. 1998) (same).

   B.   **Plaintiff's Failure to Return the Complete Agreement
         to eTelecare is Immaterial**

Plaintiff contends there is no valid agreement to arbitrate because eTelecare cannot now produce the "Mutual Agreement to Arbitrate" in the precise form that Plaintiff executed it. (As discussed, Plaintiff faxed only the first and last pages of the Agreement to eTelecare.) Significantly, Plaintiff fails to offer evidence of anything in the missing procedural pages that

---

[2]   In communication among counsel, Plaintiff's attorney acknowledged that Plaintiff was required to sign an arbitration agreement in 2004 as a condition of employment, but stated that Plaintiff no longer had a copy of the document he signed. (*See* April 15, 2008 email correspondence from Peter Jakab, Exhibit B to the Marks Dec.)

4

might vitiate his agreement to arbitrate "all claims or controversies ... that I may have against the Company" There are, in addition, several reasons why the Plaintiff's contention is unavailing.

### (1) The Arbitration Provision Plaintiff Signed and Returned to eTelecare, Standing Alone, Constitutes a Binding Agreement to Arbitrate

The pages of the "Mutual Agreement to Arbitrate" that were actually signed and returned to eTelecare by Plaintiff contain a complete and enforceable expression of his agreement to arbitrate. Page one expressly states that "the Company and I mutually consent to the resolution by arbitration of all claims or controversies ('claims'), past, present or future, whether or not arising out of my employment, that the Company may have against me or that I may have against the Company...." (Sculley Dec., Exh. F.) Plaintiff's undisputed acceptance of the Agreement's arbitration provision constitutes a fully-expressed and enforceable commitment to arbitrate, and nothing more is needed to compel arbitration of his claims. In short, by signing the arbitration provision of the Agreement and returning it to eTelecare, Plaintiff manifested his clear and unmistakable intent to arbitrate. Therefore, he must be compelled to submit his claims to arbitration. *See Oldroyd*, 134 F.3d at 74-76.

Plaintiff's contention that eTelecare's inability to produce the complete Agreement negates his express commitment to arbitrate is without merit. When the parties' intent to arbitrate is evident from the existing pages of their agreement, the fact that some pages are missing is immaterial. Thus, in *Deputy v. Lehman Bros., Inc.*, 374 F. Supp.2d 695 (E.D. Wisc. 2005), the court held that the defendant's failure to produce all pages of the parties' agreement did not defeat its motion to compel arbitration because the evidence established that the plaintiff had agreed to an arbitration provision. Therefore, the court concluded that, despite the missing pages, the arbitration provision "was in contemplation of the parties, they intended to contract for it, and there was a meeting of the minds *on that term*." *Id.* at 700-01 (emphasis supplied). *See*

5

*also Matter of Barone*, 143 A.D.2d 1008, 1009, 533 N.Y.S.2d 611, 611-12 (2nd Dept. 1988) (where it is undisputed that agreement contained arbitration provision, party is bound by that provision despite fact that 10 pages were missing from 12-page agreement).

Similarly, in this case, it is uncontested that the parties intended to, AND DID IN FACT, enter into an arbitration agreement. The employment offered to and accepted by Plaintiff was expressly conditioned upon his agreement to arbitrate. Thereafter, Plaintiff executed and returned to eTelecare the portion of the Agreement containing the arbitration clause. Thus, although Plaintiff might be able to contest what arbitration *procedures* should be followed (an issue that must be determined by the arbitrator (*see infra* p. 7-8)), he cannot legitimately contest that he entered into an agreement to arbitrate with eTelecare. Accordingly, the Court must compel Plaintiff to arbitrate the claims brought against eTelecare in this action.[3]

### (2) The Absence of Specific Arbitration Procedures Does Not Defeat the Parties' Agreement to Arbitrate

Plaintiff bases his refusal to arbitrate, in part, on the fact that eTelecare is unable to produce the pages of the arbitration agreement that set forth how the arbitrator will be appointed. However, it is well-established that an otherwise valid arbitration agreement will be enforced even if it does not specify a procedure for appointing an arbitrator. Indeed, Section 5 of the FAA expressly contemplates that an enforceable arbitration agreement need not contain an arbitrator selection procedure, and that, in the absence of such a provision, the court is empowered to appoint an arbitrator for the parties:

> *[I]f no method be provided [in the arbitration agreement]* . . .
> then upon the application of either party to the controversy the
> court shall designate and appoint an arbitrator or arbitrators or

---

[3] Plaintiff has not disputed that he entered into an agreement to arbitrate employment related claims. However, should that become his position in response to this motion, this would constitute a failure of a condition precedent to his employment with eTelecare, precluding him from asserting any contract claims based on his termination from that employment.

6

> umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5 (emphasis supplied); see also, *Acequip Ltd. v. American Eng. Corp.*, 315 F.3d 151, 157 (2d. Cir. 2003) (agreement that lacks method for appointing arbitrator is enforceable, and court may appoint arbitrator under 9 U.S.C. § 5). Thus, even if the arbitration agreement between Plaintiff and eTelecare consisted only of the two pages signed and returned by Plaintiff (*i.e.*, the arbitration provision and the signature page), arbitration is still required and the Court retains the authority, at the parties request, to appoint an arbitrator. *Id.*

Nor will the omission of specific procedures regarding hearing and discovery defeat an otherwise valid agreement to arbitrate. While it is for the Court to determine whether an agreement to arbitrate exists, it is the arbitrator's responsibility to determine issues pertaining to the arbitration procedure itself. *Unique Woodworking, Inc. v. New York City Dist. Council of Carpenter's Pension Fund*, 2007 WL 4267632, *7 (S.D.N.Y. Nov. 30, 2007) ("It is long settled that procedural matters of arbitration are to be determined by the arbitrator"); *see also Stotter Div. of Graduate Plastics Co., Inc. v. District 65*, 991 F.2d 997 (2d Cir. 1993) (arbitration procedure is a matter for the arbitrator); *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883 (2d Cir. 1982) (same). Here, Plaintiff's agreement to submit his claims to arbitration is clear, and the fact that the procedural portions of the agreement are unavailable does not render the agreement to arbitrate unenforceable. Rather, Plaintiff must be compelled to arbitrate, and the appropriate arbitration procedure is a matter for the arbitrator to decide. *See id.*

C. **Although the FAA Empowers the Court to Select the Arbitrator, and the Arbitrator Resolves Outstanding Procedural Issues, Sufficient Evidence Exists to Infer Those Missing Procedural Provisions**

eTelecare has provided unrefuted evidence that the arbitration agreement Plaintiff signed was the standard form "Mutual Agreement to Arbitrate" that was in effect in 2004, when Plaintiff executed his agreement. (Sculley Dec., ¶¶ 5, 9, 11, Exh. C.) The company did not use any other form of arbitration agreement at the time, and there is no evidence Plaintiff received anything other than the standard eTelecare form. (*See id.*) Further, the language on the first and last pages of the Agreement Plaintiff signed is identical to the language contained on the corresponding pages of the agreement signed by Brian Cotter in 2004.[4] (*Id.*, Exhs. C and F.) Plaintiff has not provided any evidence that the middle pages of the Agreement he signed differed in any material way from the standard form arbitration agreement used by eTelecare at the time. Indeed, Plaintiff cannot specify how, if at all, his arbitration agreement differed from the standard eTelecare agreement in 2004. Under the circumstances, it is reasonable to conclude that the "missing" pages in Plaintiff's "Mutual Agreement to Arbitrate" were the same as those in eTelecare's standard agreement from that time, and Plaintiff should be compelled to arbitrate using the procedures specified in the applicable standard agreement. *See, e.g., Energy Transp., Ltd. v. M.V. San Sebastian*, 348 F. Supp.2d 186, 203 (S.D.N.Y. 2004) (missing language in bill of lading will be imported from corresponding bills in use at the time where documents were "otherwise identical".); *In re Matterhorn Group, Inc.*, 2002 WL 31528396, *47 n.39 (S.D.N.Y. Nov. 15, 2002) (inferring that clause contained in other agreements in evidence was also

---

[4] One of the faxed pages Plaintiff submitted to eTelecare bore the heading "Mutual Agreement to Arbitrate Claims" and contained the identical wording used in eTelecare's standard agreement in 2004, except it was printed without the letterhead template and margin justification (as if it had been sent in text form by email and printed out by the recipient). Therefore, the bottom margins of the two documents do not line up exactly. (*See* Sculley Dec., Exhs. C, the Cotter Agreement, and F.) However, there are no substantive differences in the two documents.

contained on missing page of agreement at issue). *See also Paul Revere Variable Ann. Ins. Co. v. Zang*, 248 F.3d 1, 9 (1st Cir. 2001) ("testimony regarding regular business practice can be sufficient to establish the existence and content of missing business documents").

But even if the Court declines to import the missing pages from eTelecare's standard agreement in 2004, Plaintiff can be directed to negotiate in good faith regarding a substitute procedure. Under New York law, all contracts contain the implied covenant of good faith and fair dealing. *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F. Supp.2d 175, 180 (S.D.N.Y. 2007). That is, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Dalton v. Educational Testing Srvc.*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 997 (1995). Here, eTelecare has already attempted in good faith to negotiate with Plaintiff regarding acceptable arbitration procedures by offering to conduct the arbitration according to the rules of either the AAA or JAMS. Plaintiff rejected that offer and has provided no alternative proposal. Having expressly agreed to arbitrate his claims, Plaintiff's failure to engage eTelecare in negotiation concerning arbitration procedure constitutes a breach of his duty of good faith and fair dealing, and has acted to deprive eTelecare of the benefits of the parties' arbitration agreement. Therefore, if the procedural terms of the standard "Mutual Agreement to Arbitrate" are not applied to Plaintiff's Agreement [or left to the arbitrator to decide], Plaintiff should be required to negotiate in good faith regarding alternative procedures.

### D. The Arbitration Agreement Is Binding Not Withstanding eTelecare's Failure to Sign It

Plaintiff apparently contends that no binding arbitration agreement exists because he was never provided with a copy of the agreement executed by eTelecare. However, it is well-established that an arbitration agreement does not need to be signed at all to be enforceable, much less signed by both parties. *See, e.g., Clar Productions, Ltd. v. Isram Motion Pictures Production Svcs., Inc.*, 529 F. Supp. 381 (S.D.N.Y. 1982) (party may be bound by agreement to arbitrate even in absence of signature as long as agreement itself is in writing); *Cia. Platamon de Navegacion, S.A. v. Empress Columbiana de Petreleos*, 478 F. Supp. 66 (S.D.N.Y. 1979) (same).

Furthermore, under New York law, even when there must be a signed contract by one of the parties, the contract need only be signed by the party to be charged. *See, e.g., Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568 (2d Cir. 1993). Here, the party being charged with the obligation to arbitrate is Plaintiff, and it is undisputed that he signed the Agreement. (Sculley Dec., Exh. F.) Accordingly, the fact that Plaintiff's arbitration agreement was not signed by eTelecare does not preclude enforcement of the agreement against Plaintiff.

### II. Plaintiff's Claims Fall Within the Scope of His Arbitration Agreement

The arbitration provision of the "Mutual Agreement to Arbitrate" that Plaintiff executed and returned by fax to eTelecare expressly states that "The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due ...." (Sculley Dec., Exh. F.). These are the precise claims being advanced by Plaintiff in his Complaint. (Marks Dec., Exh. A). Thus, Plaintiff's claims are clearly covered by his arbitration agreement.

### III. Plaintiff's Statutory Claims Are Arbitrable

In addition to his common law claims (which are presumptively arbitrable), Plaintiff asserts a statutory claim for late payment or non-payment of commissions, allegedly in violation

10

of the New York Labor Law, § 190, *et seq.* Nothing in the New York Labor Law precludes arbitration of such claims. Indeed, courts have expressly held that claims under the Labor Law are arbitrable. *See, e.g., Le Roux v. Shearson Lehman Hutton, Inc.*, 160 A.D.2d 1091, 553 N.Y.S.2d 572 (3rd Dept. 1990) (compelling arbitration of claim under Labor Law seeking remuneration for commissions, bonuses and other compensation). S*ee also, Tran v. Alphonse Hotel Corp.*, 860 F. Supp. 91 (S.D.N.Y. 1993) (dismissing claim under Labor Law Section 198 for failure to exhaust contractual arbitration remedy), *aff'd in relevant part*, 54 F.3d 115 (2d Cir. 1995), *cert. denied*, 517 U.S. 1133 (1996). Accordingly, Plaintiff's claim for commissions under state law is subject to arbitration.[5]

### IV.   Plaintiff's Demand For a Trial By Jury Should Be Stricken

Even if the Court were to disregard the parties' agreement to arbitrate (and there is no basis for doing so), the jury trial waiver that Plaintiff executed should be enforced. Under New York law, a party may waive its right to a trial by jury. *See Brown v. Cushman & Wakefield, Inc.*, 235 F. Supp.2d 291, 293 (S.D.N.Y. 2002) ("jury trial waivers are enforced if they are knowing and voluntary). Here, Plaintiff explicitly did so knowingly and voluntarily when he signed the last page of the Mutual Agreement to Arbitrate. Specifically, Plaintiff agreed: "I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL." (Sculley Dec., Exh. F). Accordingly, if this Court declines to compel arbitration of Plaintiff's claims, it should, at a minimum, strike his demand for a jury trial based on this waiver and conduct a bench trial on his claims.

---

[5] The fourth part of the Second Circuit's inquiry, *i.e.* whether non-arbitrable claims should be stayed pending arbitration, is inapplicable here because all of Dreyfuss' claims are arbitrable. *See Oldroyd*, 134 F.3d at 76.

## CONCLUSION

In sum, Defendant has established that: (1) Plaintiff entered into valid arbitration agreement; (2) his claims clearly fall within the scope of that agreement; and (3) his claims are arbitrable. Therefore, Defendant respectfully requests that the Court: dismiss or stay this action in its entirety and compel Plaintiff to submit his claims to arbitration; alternatively, strike Plaintiff's demand for a jury trial; and grant Defendant such other or further relief as the Court deems appropriate.

Date:    New York, New York          Respectfully submitted,
         May 27, 2008

                                      By:    /s/ Deke W. Bond
                                          Andrew P. Marks (AM-0361)
                                          Deke W. Bond (DB-0349)
                                          LITTLER MENDELSON, P.C.
                                          885 Third Avenue, 16th Floor
                                          New York, New York 10022-4834
                                          (212) 583-9600
                                          Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES DREYFUSS,<br><br>        Plaintiff,<br><br>-against-<br><br>ETELECARE GLOBAL SOLUTIONS-US, INC.,<br><br>        Defendant. | 08 CV 1115 (RJS)<br><br>**CERTIFICATE OF SERVICE**<br><br>**DOCUMENT FILED ELECTRONICALLY** |

I hereby certify that on May 27, 2008, I served the foregoing on the following by filing it electronically with Clerk of the above-captioned Court using its CM/ECF systems and by also sending a copy via First Class Mail, by placing said copy into a sealed envelope with postage affixed thereon into an official depository under the exclusive care and custody of the United States Postal Service, upon:

> Peter Jakab, Esq.
> Fein & Jakab
> 233 Broadway, Suite 930
> New York, New York  10279
> Attorneys for Plaintiff

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of May, 2008, in New York, New York.

_____
Deke W. Bond

Firmwide:85346571.2 059182.1000