UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES DREYFUSS, | 08 CV 1115 (RJS) |
| Plaintiff, | |
| -against- | |
| ETELECARE GLOBAL SOLUTIONS-US, INC., | |
| Defendant. | |

## DECLARATION OF MARY SCULLEY

Pursuant to 28 U.S.C. § 1746 of the laws of the United States of America, I, Mary Sculley, do hereby swear, affirm and attest under the penalty of perjury, that the following is true and correct to the best of my personal knowledge and the books and records of eTelecare Global Solutions, Inc.

1.     I am the Senior Vice President Human Resources and Organizational Development for Defendant eTelecare Global Solutions Inc. ("eTelecare").

2.     In connection with the above-referenced litigation, I have reviewed the personnel file maintained by eTelecare for the Plaintiff James Dreyfuss.  Mr. Dreyfuss' personnel file contains several documents that appear to have been faxed by Mr. Dreyfuss to eTelecare on July 9, 2004.

3.     Annexed hereto as Exhibit A is a true and correct copy of the offer letter contained in Mr. Dreyfuss' personnel file.  The first page of the offer letter is dated March 18, 2004.  The second page appears to be a fax copy of a signature page signed by Mr. Dreyfuss and faxed to eTelecare on July 9, 2004.  The cover letter appears to have been prepared by Susan P.

Knox and her name is printed on the letter, the letter is not signed by Ms. Knox. Ms. Knox is no longer employed by eTelecare. Although I was not employed with eTelecare in 2004, it is my understanding that the offer letter was a form letter used by eTelecare. I further believe that the offer letter was transmitted by eTelecare via email or fax from eTelecare offices in California, to Mr. Dreyfuss at his home or office in the northeast United States because his address is not listed on the letter.

4.      Mr. Dreyfuss' offer letter advises him that "your employment is also contingent on your execution of the following two agreements attached as exhibits to this letter: (1) Proprietary Information and Confidentiality Agreement; and (2) Mutual Agreement to Arbitrate Claims." I have compared Mr. Dreyfuss' offer letter with eTelecare's offer letter to Colleen Alvarado, dated March 14, 2002, and to Brian Cotter, dated September 17, 2004, copies of which are annexed as Exhibit B. The Alvarado and Cotter offer letters contain the same requirements.

5.      Annexed hereto as Exhibit C are copies of the Mutual Agreement to Arbitrate that were signed by Ms. Alvarado and Mr. Cotter in 2002 and 2004, respectively.

6.      Annexed hereto as Exhibit D is a copy of the Proprietary Information and Confidentiality Agreement executed by Mr. Dreyfuss and faxed to eTelecare on July 9, 2004, which was contained in Mr. Dreyfuss' personnel file.

7.      Annexed hereto as Exhibit E is an At-Will Employment Agreement found in Mr. Dreyfuss' personnel file which appears to be signed by him and faxed to eTelecare on July 9, 2004.

8.      Annexed hereto as Exhibit F is the Mutual Agreement to Arbitrate Claims that was also contained in Mr. Dreyfuss' personnel file. It appears that the first and last pages of that

agreement were faxed by Mr. Dreyfuss to eTelecare on July 9, 2004, the last page bearing Mr. Dreyfuss' signature under the statement "I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL." The first page of the Mutual Agreement to Arbitrate Claims faxed by Mr. Dreyfuss to eTelecare expressly states that "The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company or against its officers, directors, employees or agents in their capacity as such or otherwise." The outgoing telephone number for the facsimile printed on the transmittal pages is a New York City number registered to an "H. Dreyfuss."

9.      One of the faxed pages received on July 9, 2004 contains the identical wording contained on the first page of a standard Mutual Agreement to Arbitrate Claims, except it was printed without margin justification (as if it had been sent in text form by email and printed by the recipient rather than in hard copy) and therefore contained several lines from page two of the standard agreement.

10.     I have reviewed the files but have been unable to locate any of the remaining pages of the arbitration agreement as it may have been sent to or received from Mr. Dreyfuss.

11.     I have compared the pages of the Mutual Agreement to Arbitrate Claims found in Mr. Dreyfuss' personnel file with the Mutual Agreement to Arbitrate Claims contained in the files of Alvarado and Cotter. The arbitration agreements signed by Alvarado and Cotter are identical in all material respects to the Mutual Agreement to Arbitrate Claims in Mr. Dreyfuss' personnel file. Significantly, the signature pages of all three agreements contain the statement that "I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY

RIGHT TO A JURY TRIAL." I am not aware of any other agreement used by eTelecare that uses a similar signature page. Pages two through five of those agreements contain primarily procedural provisions regarding the conduct of the arbitration.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ____9____ day of May, 2008, in _Scottsdale, Arizona_.

_Mary E Sculley_

Mary Sculley

Firmwide:84967109.1 059182.1001

# EXHIBIT A



March 18, 2004

Mr. Jamie Dreyfuss

Dear Jamie:

We are pleased to offer you the position of Regional Vice President of Sales with eTelecare International, Inc. ("Company") for the Northeast Region. Your principle duties and responsibilities will be to close $5,000,000 of revenue in 2004. Employment will commence on April 5, 2004.

Your salary will be at the monthly rate of $9,167 ($110,000/year). In addition, you will be entitled to the benefits identified in the Company's Employee Handbook. These include 15 days per year of paid-time-off (PTO), seven fixed and one floating holiday, and medical and dental insurance.

Also, as part of your compensation, the Company is pleased to offer you the opportunity to receive commission based on revenue closed, a bonus based on profit margin, and a bonus based on quarterly attainment, with a target of $250,000/year for your variable compensation. Details of your commission and bonuses are included compensation proposal attached.

As the Company requires of all prospective employees, before you commence your employment with us, we must have satisfactory proof of your employment eligibility and identity under the Immigration Reform Control Act of 1986.

Your employment is contingent on your representation that you are not subject to any restrictions that would prevent you from performing your duties as Regional Vice President of Sales and Marketing at the Company. Your employment also is contingent on your execution of the following two agreements attached as exhibits to this letter: (1) Proprietary Information and Confidentiality Agreement; and (2) Mutual Agreement to Arbitrate Claims.

Your signature below acknowledges that no material representations have been made to you about the Company, the terms or conditions of your employment, or the nature of the position offered to you other than those set forth in this letter or in the materials that this letter indicates you will be receiving.

Jamie, we look forward to your acceptance of our offer. We are excited about the opportunity of having someone of your experience and abilities in this important role. This is an exciting time for our company, and we hope you will be a part of it.

Sincerely,

Susan P. Knox
Senior Vice President, Sales & Marketing
eTelecare International

Encl.

Accepted: _James Dreyf_____     Date  7/9/04

# EXHIBIT B



March 14, 2002

Colleen Alvarado
8912 E. Arcadia Avenue
San Gabriel, CA  91775

Dear Colleen:

We are pleased to offer you the position of Sales and Marketing Assistant with
eTelecare International, Inc. ("Company").  Your principle duties and responsibilities
will be as defined in the Sales and Marketing Assistant job description (see attached).
Those duties and responsibilities may change from time to time at management's
discretion according to business needs.  The employment will commence on Monday,
March 25, 2002.

Your salary will be at the monthly rate of  $3500.  In addition, you will be entitled to the
benefits identified in the Company's Employee Handbook.  These include 15 days per
year of paid-time-off (PTO), seven fixed and one floating holiday, and medical and
dental insurance.

Also, as part of your compensation the Company is pleased to offer you the
opportunity to receive annually up to an additional 20% of your base salary as a bonus
based on performance.  During the first year, this bonus will be pro-rated based on
your starting date.

As the Company requires of all prospective employees, before you commence your
employment with us, we must have satisfactory proof of your employment eligibility
and identity under the Immigration Reform Control Act of 1986.

Your employment is contingent on your representation that you are not subject to any
restrictions that would prevent you from performing your duties as Sales and
Marketing Assistant at the Company.  Your employment also is contingent on your
execution of the following three agreements attached as exhibits to this letter:  (1) At
Will Employment Agreement; (2) Proprietary Information and Confidentiality
Agreement; and (3) Mutual Agreement to Arbitrate Claims.

As set forth in the At Will Employment Agreement, all Company employees are "at
will" employees, which means that the employment relationship may be terminated at
any time, for any reason, either by the Company or by the employee.  By accepting

employment with us, you agree that nothing in this offer letter or the Company's policies, procedures or benefits creates a contract of employment.

Your signature below acknowledges that no material representations have been made to you about the Company, the terms or conditions of your employment, or the nature of the position offered to you other than those set forth in this letter or in the materials that this letter indicates you will be receiving.

Colleen, we look forward to your acceptance of our offer.  We are excited about the opportunity of having someone of your experience and abilities in this important role. This is an exciting time for our company, and we hope you will be a part of it.

Please indicate your acceptance of this offer letter by signing below where noted.

Sincerely,

Natalie Fischer
Marketing Manager, eTelecare International


Enc.


Accepted: _____  Date 7/25/02

2

SEP. 23. 2004  2:13PM        6262567555               ETELECARE              NO. 053   P.P.  '01
05/22/2004  10:03



September 17, 2004


Mr. Brian Cotter
2330 6th Street #2
Santa Monica, CA 90405


Dear Brian:

We are very pleased to offer you the position of Manager with eTelecare International, Inc., ("Company") based in Monrovia, California. Initially, your principle duties and responsibilities will include a) Operational Improvement Projects, and b) Interfacing with Sales and Operations to create value propositions for new and existing clients. These duties and responsibilities will likely evolve from time to time at management's discretion according to business needs. The employment will commence on October 5, 2004, or as soon before then as you are available.

Your salary will be at the monthly rate of $10,416.67 ($125,000/year). In addition, you will be entitled to the benefits identified in the Company's Employee Handbook. These include 15 days per year of paid-time-off (PTO), seven fixed and one floating holiday, and medical and dental insurance.

Also, as part of your compensation the Company is pleased to offer you the opportunity to receive annually up to an additional $50,000 as a bonus based on your performance.

In addition, you will receive options to purchase 12,000 shares in eTelecare at strike price of $2.50, vesting over 4 years based on your continued employment with the Company. 25% of the options will vest each year on the anniversary of your employment with the Company.

Your employment is contingent on your representation that you are not subject to any restrictions that would prevent you from performing your duties as a Manager at the Company. Your employment is also contingent on your execution of the following two agreements attached as exhibits to this letter: (1) At-Will Agreement; (2) Proprietary Information and Confidentiality Agreement; and (3) Mutual Agreement to Arbitrate Claims.

Your signature below acknowledges that no material representations have been made to you about the Company, the terms or conditions of your employment, or the nature of the position offered to you other than those set forth in this letter or in

SEP. 23. 2004  2:19PM  6262567565                    ETELECARE                    NO. 853   P. 2 02

the materials that this letter indicates you will be receiving.

Brian, we look forward to your acceptance of our offer. We are excited about the opportunity of having someone of your experience and abilities in this important role. This is an exciting time for our company, and we hope you will be a part of it.

Please indicate your acceptance of this offer letter by signing below where noted.

Sincerely,

James W. Franke
President, eTelecare International


Enc.


Accepted: _____    Date: _9/20/04_

2

# EXHIBIT C



## MUTUAL AGREEMENT TO ARBITRATE CLAIMS

I recognize that differences may arise between eTelecare (the "Company") and me during or following my employment with the Company, and that those differences may or may not be related to my employment. I understand and agree that by entering into this Agreement to Arbitrate Claims ("Agreement"), I anticipate gaining the benefits of a speedy, impartial final and binding dispute-resolution procedure.

Except as provided in this Agreement, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement. To the extent that the Federal Arbitration Act is inapplicable, state law pertaining to agreements to arbitrate shall apply.

**Claims Covered by the Agreement**
The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against any of the following (1) the Company, (2) its officers, directors, employees or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary and affiliated entities, including without limitation its predecessor Integrated Telecom, LLC, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and/or (5) all successors and assigns of any of them.

The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justifiable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, physical or mental disability or handicap, or medical condition); claims for benefits (except claims under an employee benefit or pension plan that either (1) specifies that its claims procedure shall culminate in an arbitration procedure different from this one, or (2) is underwritten by a commercial insurer which decides claims); and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded elsewhere in this Agreement entitled "Claims Not Covered By The Agreement."

Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination to the Equal Employment Opportunity Commission, California Department of Fair Employment and Housing, or similar state fair employment practices agency, or an administrative charge within the jurisdiction of the National Labor Relations Board), in any way related to any claim covered by this Agreement.

**Claims Not Covered by the Agreement**
Claims for workers' compensation or unemployment compensation benefits are not covered by this Agreement.

Also not covered are claims by the Company or by me for temporary restraining orders or preliminary injunctions ("temporary equitable relief") in cases in which such temporary equitable relief would otherwise be authorized by law. Such resort to temporary equitable relief shall be in aid of arbitration only, and in such cases the trial on the merits of the action will occur in front of, and will be decided by, the Arbitrator, who will have the same ability to order legal or equitable remedies as could a court of general jurisdiction.

**Time Limits for Commencing Arbitration and Required Notice of All Claims**
The Company and I agree that the aggrieved party must give written notice of any claim to the other party no later than the expiration of the Statute of Limitations (deadline for filing) that the law prescribes for the claim. Otherwise the claim shall be void and deemed waived. I understand that the aggrieved party is encouraged to give written notice of any claim as soon as possible after the event or events in dispute so that arbitration of any differences may take place promptly.

Written notice to the Company, or its officers, directors, employees or agents, shall be sent to its President at 602 East Huntington Drive, Suite H, Monrovia, California 91016, or the Company's then-current address. I will be given written notice at the last address recorded in my personnel file.

The written notice shall identify and describe the nature of all claims asserted, the facts upon which such claims are based and the relief or remedy sought. The notice shall be sent to the other party by certified or registered mail, return receipt requested.

**Representation**
Any party may be represented by an attorney or other representative selected by the party.

**Discovery**
Each party shall have the right to take the deposition of one individual and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party and to subpoena documents from third parties. Requests for additional discovery may be made to the Arbitrator selected pursuant to this Agreement. The Arbitrator shall grant an order for such requested additional discovery that the Arbitrator finds the party requires to adequately arbitrate a claim, taking into account the parties' mutual desire to have a fast, cost-effective dispute resolution mechanism.

**Designation of Witnesses**
At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration.

2

**Subpoenas**
Each party shall have the right to subpoena witnesses and documents for the arbitration as well as documents relevant to the case from third parties.

**Arbitration Procedures**
The arbitration will be held under the auspices of a sponsoring organization, either the American Arbitration Association ("AAA") or Judicial Arbitration & Mediation Services, Inc. ("J·A·M·S"), with the designation of the sponsoring organization to be made by the party who did not initiate the claim.

The Company and I agree that, except as provided in this Agreement, the arbitration shall be in accordance with the sponsoring organization's then-current arbitration rules/procedures. The arbitrator shall be either a retired judge, or an attorney who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened (the "Arbitrator").

The Arbitrator shall be selected as follows. The sponsoring organization shall give each party a list of eleven (11) arbitrators drawn from its panel of employment dispute arbitrators. Each party shall have ten (10) calendar days from the postmark date on the list to strike all names on the list it deems unacceptable. If only one common name remains on the lists of all parties, that individual shall be designated as the Arbitrator. If more than one common name remains on the lists of all parties, the parties shall strike names alternately from the list of common names until only one remains. The party who did not initiate the claim shall strike first. If no common name exists on the lists of all parties, the sponsoring organization shall furnish an additional list of eleven (11) arbitrators from which the parties shall strike alternately, with the party initiating the claim striking first, until only one name remains. That person shall be designated as the Arbitrator.

The Arbitrator shall apply the substantive law, (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law, or law of remedies. The Federal Rules of Evidence shall apply. The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems advisable. The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

Either party, at its expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings.

3

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party, upon request at the close of hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render an award and written opinion in the form typically rendered in labor arbitrations no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The opinion shall include the factual and legal basis for the award.

Either party shall have the right, within twenty (20) days of issuance of the Arbitrator's opinion, to file with the Arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond. The Arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties.

**Arbitration Fees and Costs**
The Company is responsible for any filing fee and the fees and costs of the Arbitrator. Each party shall pay for its own costs and attorneys' fees, if any; provided, however, that if I am the party initiating the claim, I will contribute an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which I am (or was last) employed by the Company. Each party shall pay for its own costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and/or costs, the Arbitrator may award reasonable attorneys' fees and/or costs to the prevailing party, applying the same standards a court would apply under the law applicable to the claim(s).

**Judicial Review**
Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award. A party opposing enforcement of an award may bring a separate action in any court of competent jurisdiction to set aside the award, where the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

**Interstate Commerce**
I understand and agree that the Company is engaged in transactions involving interstate commerce.

**Requirements for Modification or Revocation**
This Agreement to arbitrate shall survive the termination of my employment and the expiration of any benefit plan. It can only be revoked or modified by a writing signed

4

by the Company's President and me, which specifically states intent to revoke or modify this Agreement.

**Sole and Entire Agreement**
This is the complete agreement of the parties on the subject of arbitration of disputes, except for any arbitration agreement in connection with any pension or benefit plan. This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

**Construction**
If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, that provision shall be ineffective only to the extent of such unenforceability and shall not affect the validity of the remainder of the Agreement. All other provisions shall remain in full force and effect.

**Consideration**
The promises by the Company and by me to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other.

**Not an Employment Agreement**
This Agreement is not, and shall not be construed to create, any contract of employment, express or implied. Nor does this Agreement in any way alter the "at-will" status of my employment.

**Voluntary Agreement**
I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.

Employee initials:
C. A.

I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL. I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

| 3/25/02 | Colleen Alvarado | COLLEEN ALVARADO |
|---|---|---|
| Date | Signature of Employee | Printed Name of Employee |

| 3-25-02 | Derek Hiley | Derek Hiley |
|---|---|---|
| Date | Signature of Company Representative | Printed Name of Company Representative |

6

## MUTUAL AGREEMENT TO ARBITRATE CLAIMS

I recognize that differences may arise between eTelecare International, Inc. and/or its related or affiliated companies or entities, and/or their predecessors or successors (collectively the "Company") and me during or following my employment with the Company, and that those differences may or may not be related to my employment. I understand and agree that by entering into this Agreement to Arbitrate Claims ("Agreement"), I anticipate gaining the benefits of a speedy, impartial dispute-resolution procedure.

Except as provided in this Agreement, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement. To the extent that the Federal Arbitration Act is inapplicable, California law pertaining to agreements to arbitrate shall apply.

I understand that any reference in this Agreement to the Company will be a reference also to its parent company, all of its subsidiary and affiliated entities, all benefit plans, the benefit plans' sponsors, fiduciaries, administrators, and affiliates, and all successors and assigns of any of them.

### Claims Covered by the Agreement

The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company or against its officers, directors, employees or agents in their capacity as such or otherwise. The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, or medical condition, handicap or disability); claims for benefits (except claims under an employee benefit or pension plan that either (1) specifies that its claims procedure shall culminate in an arbitration procedure different from this one, or (2) is underwritten by a commercial insurer which decides claims); and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded elsewhere in this Agreement.

Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination to the EEOC, California Department of Fair

Employment and Housing, or similar fair employment practices agency, or an administrative charge within the jurisdiction of the National Labor Relations Board), in any way related to any claim covered by this Agreement.

## Claims Not Covered by the Agreement

Claims for workers' compensation or unemployment compensation benefits are not covered by this Agreement.

## Required Notice of All Claims and Statute of Limitations

The Company and I agree that the aggrieved party must give written notice of any claim to the other party no later than the applicable Statute of Limitations as may be prescribed by law.

Written notice to the Company, or its officers, directors, employees or agents, shall be sent to its President at 602 East Huntington Drive, Suite H, Monrovia, California 91016. I will be given written notice at the last address recorded in my personnel file.

The written notice shall identify and describe the nature of all claims asserted and the facts upon which such claims are based. The notice shall be sent to the other party by certified or registered mail, return receipt requested.

## Representation

Any party may be represented by an attorney or other representative selected by the party.

## Discovery

Each party shall have the right to take the deposition of one individual and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party. The subpoena right specified below shall be applicable to discovery pursuant to this paragraph. Additional discovery may be had only where the arbitrator selected pursuant to this Agreement so orders, upon a showing of substantial need.

## Designation of Witnesses

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any expert, and copies of all exhibits intended to be used at the arbitration.

## Subpoenas

Each party shall have the right to subpoena witnesses and documents for the arbitration.

2

**Arbitration Procedures**

The arbitration will be held under the auspices of either the American Arbitration Association ("AAA") or Judicial Arbitration & Mediation Services, Inc. ("J·A·M·S"), with the designation of the sponsoring organization to be made by the party who did not initiate the claim.

The Company and I agree that, except as provided in this Agreement, the arbitration shall be in accordance with the AAA's then-current employment arbitration procedures (if AAA is designated) or the then-current J·A·M·S employment arbitration rules (if J·A·M·S is designated). The arbitrator shall be either a retired judge, or an attorney licensed to practice law in the state in which the arbitration is convened (the "Arbitrator"). The arbitration shall take place in or near the city in which I was last employed by the Company.

The Arbitrator shall be selected as follows. The sponsoring organization shall give each party a list of 11 arbitrators drawn from its panel of employment dispute arbitrators. Each party may strike all names on the list it deems unacceptable. If only one common name remains on the lists of all parties, that individual shall be designated as the Arbitrator. If more than one common name remains on the lists of all parties, the parties shall strike names alternately from the list of common names until only one remains. The party who did not initiate the claim shall strike first. If no common name exists on the lists of all parties, the sponsoring organization shall furnish an additional list and the process shall be repeated. If no arbitrator has been selected after two lists have been distributed, then the parties shall strike alternately from a third list, with the party initiating the claim striking first, until only one name remains. That person shall be designated as the Arbitrator.

The Arbitrator shall apply the substantive law, (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law, or law of remedies. The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems necessary. The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

3

Either party, at its expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings.

Either party, upon request at the close of hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render an award and opinion in the form typically rendered in labor arbitrations.

Either party shall have the right, within 20 days of issuance of the Arbitrator's opinion, to file with the Arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have 20 days from the date of the motion to respond. The arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties. The costs of such a motion for reconsideration and written opinion of the Arbitrator shall be borne by the party prevailing on the motion, unless the Arbitrator orders otherwise.

## Arbitration Fees and Costs

The Company and I shall equally share any filing fee and the fees and costs of the Arbitrator; provided, however, that my maximum contribution will be the lesser of (i) one week's pay at my regular base rate, or (ii) 10% of the amount in controversy. I understand that the Arbitrator has the authority upon motion to further reduce my share of the costs and fees upon a showing of substantial need. Each party will deposit funds or post other appropriate security for its share of the Arbitrator's fee, in an amount and manner determined by the Arbitrator, 10 days before the first day of hearing. Each party shall pay for its own costs and attorneys' fees, if any. However, if any party prevails on a statutory claim, which affords the prevailing party attorneys' fees, or if there is a written agreement providing for fees, the Arbitrator may award reasonable fees to the prevailing party.

## Judicial Review

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award. A party opposing enforcement of an award may bring a separate action in any court of competent jurisdiction to set aside the award, where the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

## Interstate Commerce

I understand and agree that the Company is engaged in transactions involving interstate commerce and that the Federal Arbitration Act applies to this Agreement.

4

### Requirements for Modification or Revocation

This Agreement to arbitrate shall survive the termination of my employment and the expiration of any benefit plan. It can only be revoked or modified by a writing signed by the parties, which specifically states an intent to revoke or modify this Agreement.

### Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of disputes, except for any arbitration agreement in connection with any pension or benefit plan. This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

### Construction

If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, that provision shall be ineffective only to the extent of such unenforceability and shall not affect the validity of the remainder of the Agreement.

### Consideration

The promises by the Company and by me to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other.

### Not an Employment Agreement

This Agreement is not, and shall not be construed to create, any contract of employment, express or implied. Nor does this Agreement in any way alter the "at-will" status of my employment.

### Voluntary Agreement

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR

Employee initials:

5

REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.

I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

10/3/04
Date

Signature of Employee

Brian Cotter
Printed Name of Employee

10/5/04
Date

Signature of Company
Representative

Derek Holley
Printed Name of Company
Representative

6

# EXHIBIT D

ATTENTION: VICKIE LINDSAY
FAX # 626-303-6752

## PROPRIETARY INFORMATION AND CONFIDENTIALITY AGREEMENT

Employee Name: JAMES    DREYFUSS

I recognize that Etelecare International, Inc. and/or its related or affiliated companies or entities, and/or their predecessors or successors (collectively the "Company"), is engaged in the sale of customer contact services to specialized customers, and that this business necessitates a continuous program of research, marketing and customer solicitation and contact.

I understand that my employment by the Company creates in me a duty of trust and confidentiality to the Company with respect to any information (1) related, applicable or useful to the business of the Company; or (2) resulting from tasks assigned to me by the Company; or (3) regarding the particular needs and desires of any of the Company's customers, which may be made known to me by the Company or by any client or customer of the Company, or learned by me during the period of my employment.

As part of the consideration for my continued employment by the Company, and the compensation received by me from the Company from time to time, I hereby agree as follows:

1. For purposes of this Agreement, "Proprietary Information" shall mean information generally unavailable to the public that has been created, discovered, developed or otherwise become known to the Company, which information has economic value or potential economic value to the business in which the Company is or will be engaged. Proprietary Information shall include, but not be limited to the Company's: trade secrets; strategic plan; marketing and sales reports and forecasts; financial information (such as annual sales, expenses and gross and net profits); customer, broker and supplier lists and any modifications or enhancements of same; financial terms or arrangements with customers, brokers or suppliers; training materials; processes; data; know-how; negative know-how; business forms; improvements; discoveries; developments; designs; techniques; programs and information (whether or not in writing), which have actual or potential economic value to the Company. Without limiting the foregoing, Proprietary Information shall specifically include:

   a) potential and actual customers and/or customer lists;

   b) research about potential or actual customers and/or customer lists; and

   c) any duplication, reproduction or excerpt in any form whatsoever, of the information contained in such customer research or customer lists.

2. At all times, both during my employment and after the termination of my employment, whether the termination is voluntary or involuntary, for any

reason or no reason, or by disability, I will keep in strictest confidence and trust all Proprietary Information, and I will not disclose, use, or induce or assist in the use or disclosure of any Proprietary Information or Company rights pertaining to Proprietary Information, or anything related to same, without the prior express written consent of the Company, except as may be necessary in the ordinary course of performing my duties as an employee of the Company. I further agree that at any time after the termination of my employment, I will not use the Company's Proprietary Information to contact any of the Company's customers, clients or, if known to me, prospects. I acknowledge that, under certain circumstances, employment with or activities on behalf of a competitor of the Company could inherently call upon me to reveal Proprietary Information to which I have access or learned during my employment, in order to fulfill my duties or obligations to the competitor. Thus, during the two-year period following termination of my employment, I will not accept any such employment or engage in any such activities that would require me to use or disclose Proprietary Information.

3.  During and subsequent to the period of my employment, I agree that I will not:

    a)  disclose to others, use, copy or permit to be copied, except in pursuance of my duties for and on behalf of the Company, any Proprietary Information;

    b)  remove Proprietary Information from Company premises except in the ordinary course of conducting business for the Company;

    c)  assert any claim of ownership of or other property interest in any Proprietary Information; or

    d)  divulge to any person any information received during the course of my employment concerning the business of the Company and its financial condition.

4.  Upon termination of my employment with the Company, I will:

    a)  immediately deliver to the Company any Proprietary Information, including all reproductions in any format, then in my possession or control; and

    b)  permit the Company to inspect any materials to be removed from Company premises.

5.  During my employment and for a period of twelve (12) months after the termination of my employment, I will not, either directly or indirectly, either alone or in concert with others:

    a)  solicit or attempt to solicit, directly or indirectly, any of the Company's customers, as of the date of separation, with respect to call center

services or any other line of business in which the Company was engaged at the time of termination; or

   b) recruit or attempt to recruit, directly or indirectly, any employee of the Company for employment with any other organization which does business in call center services or any other line of business in which the Company was engaged at the time of termination.

6. I represent that I have not entered into, and I agree that I will not enter into, any agreement, either written or oral, in conflict with the terms of this Agreement. I also understand that in my service to the Company, I am not to breach any obligation of confidentiality that I have to former employers, and I have fulfilled all such obligations during my employment.

7. I acknowledge that irreparable injury will result to the Company from my violation or continued violation of the terms of this Agreement and I expressly agree that the Company shall be entitled, in addition to damages and any other remedies provided by law, to an injunction or other equitable remedy respecting such violation or continued violation by me.

8. This Agreement shall be governed by and construed under and according to the internal substantive laws, and not the laws of conflicts, of the State of California.

9. If any provision of this Agreement is held to be unenforceable for any reason, that provision shall be ineffective only to the extent of such unenforceability and shall not invalidate or otherwise render ineffective any other provision of this Agreement.

10. Nothing in this Agreement shall obligate the Company to continue to retain me as an employee. Stipulations covering my employment are covered in the At-Will Employment Agreement dated July 12, 2000.

11. No implied waiver by the Company of any provision within this Agreement shall arise in the absence of a waiver in writing signed by the Company, and no waiver by the Company with respect to a specific circumstance, event or occasion shall be construed as a continuing waiver as to similar circumstances, events or occasions.

12. This Agreement contains the sole and entire agreement and understanding between the Company and myself with respect to its subject matter, and supersedes and replaces any prior agreement to the extent any such agreement is inconsistent with the terms of this Agreement.

13. This Agreement can be amended, modified, released or changed, in whole or in part, only by a written agreement signed by the Company and myself.

14. This Agreement shall be binding upon me, my heirs, executors, assigns and administrators, and shall inure to the benefit of the Company and its

successors or assigns.

15. I have read this entire Agreement and understand it completely, and by my signature below, I represent that this Agreement is the only statement made by or on behalf of the Company upon which I have relied in signing this Agreement.

16. This Agreement shall be effective as of the first day on which I accept the Company's offer of employment.

**EMPLOYEE**

Signature of Employee

JAMES    DREYFUSS
Print Name

**ETELECARE INTERNATIONAL, INC.**

By:  Derek Holley
President

# EXHIBIT E

## AT-WILL EMPLOYMENT AGREEMENT

All employees of eTelecare International, Inc. and all related or affiliated companies or entities, and all their predecessors and successors (collectively the "Company") are employed on an "at will" basis. This means that both the Company and the employee have the right to terminate the employment relationship at any time, for any reason, with or without prior notice or cause.

This Agreement is intended to make the mutual "at will" relationship perfectly clear, and to make clear that no employee has any express or implied contract limiting his or her right to resign, or the Company's right to terminate his or her employment, at any time, for any reason, with or without prior notice or cause. Furthermore, that "at will" relationship cannot be changed by any person, statements, acts, series of events, or pattern of conduct, but only by an express individual written employment agreement signed by the President of the Company and by the employee.

By my signature below, I acknowledge that I have read and understand the above and I agree that my employment with the Company is "at will" and that the "at will" nature of my employment can be modified only by an express individual written employment agreement signed by the President of the Company and by me. I further acknowledge that this Agreement contains the sole and entire agreement and understanding between the Company and myself with respect to its subject matter, and is the only statement made by or on behalf of the Company on which I have relied in signing this Agreement.

| 7/9/04 | _James Dreyfus_ | JAMES DREYFUSS |
|---|---|---|
| Date | Signature of Employee | Printed Name of Employee |

| | | |
|---|---|---|
| Date | Signature of Company Representative | Printed Name of Company Representative |

# EXHIBIT F

## MUTUAL AGREEMENT TO ARBITRATE CLAIMS

I recognize that differences may arise between eTelecare International, Inc. and/or its related or affiliated companies or entities, and/or their predecessors or successors (collectively the "Company") and me during or following my employment with the Company, and that those differences may or may not be related to my employment. I understand and agree that by entering into this Agreement to Arbitrate Claims ("Agreement"), I anticipate gaining the benefits of a speedy, impartial dispute-resolution procedure.

Except as provided in this Agreement, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement. To the extent that the Federal Arbitration Act is inapplicable, California law pertaining to agreements to arbitrate shall apply.

I understand that any reference in this Agreement to the Company will be a reference also to its parent company, all of its subsidiary and affiliated entities, all benefit plans, the benefit plans' sponsors, fiduciaries, administrators, and affiliates, and all successors and assigns of any of them.

### Claims Covered by the Agreement

The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company or against its officers, directors, employees or agents in their capacity as such or otherwise. The only claims that are arbitable are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, or medical condition, handicap or disability); claims for benefits (except claims under an employee benefit or pension plan that either (1) specifies that its claims procedure shall culminate in an arbitration procedure different from this one, or (2) is underwritten by a commercial insurer which decides claims); and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded elsewhere in this Agreement.

Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination to the EEOC, California Department of Fair Employment and Housing, or similar fair employment practices agency, or an administrative charge within the jurisdiction of the National Labor Relations Board), in any way related to any claim covered by this

I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

7/9/04
Date

Signature of Employee

JAMES    DREYFUS
Printed Name of Employee

Date

Signature of Company
Representative

Printed Name of Company
Representative