Peter Jakab (PJ-8553)
FEIN & JAKAB
THE WOOLWORTH BUILDING
233 Broadway • Suite 930
New York, NY 10279
212 732 9290 Ph
212 227 6479 Fx

*Attorneys for Plaintiff*
JAMES DREYFUSS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JAMES DREYFUSS, | **ECF CASE** |
| Plaintiff, | Case No.:   08 cv 1115 (RJS) |
| - against - |  |
| ETELECARE GLOBAL SOLUTIONS-US, INC., a Delaware corporation, |  |
| Defendant. |  |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**MOTION TO COMPEL ARBITRATION OR STRIKE DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………..     ii

INTRODUCTION AND SUMMARY………………………………………………...     2

SUBSTANTIVE BACKGROUND………………………………………………....     4

ARGUMENT…………………………………………………………………………..     5

   I.   DEFENDANT HAS FAILED TO MET ITS BURDEN TO PRODUCE
       THE ARBITRATION AGREEMENT IT IS SEEKING TO ENFORCE…………..     5

   II.  DEFENDANT HAS FAILED TO ESTABLISH THAT
       IT HAD A "STANDARD" AGREEMENT IN FORCE……………………………     10

   III. ANY 2004 INDIVIDUAL AGREEMENT WAS EXPRESSLY
       TERMINATED BY THE PARTIES' 2006 AGREEMENT………………………..     13

   IV. THE JURY DEMAND HAS NOT BEEN WAIVED………………………………     14

CONCLUSION…………………………………………………………………………...     16

i

<u>**TABLE OF AUTHORITIES**</u>

<u>**CASE LAW**</u>                                                                                      <u>Page</u>
                                                                                               <u>No.</u>

<u>Ahn v. Rooney, Pace Inc.</u>
624 F. Supp. 368 (S.D.N.Y. 1985)……………………………………………………….  8
<u>Deputy v. Lehman Bros., Inc.</u>
374 F.Supp.2d 695 (E.D. Wis. 2005)…………………………………………………….  8, 9
<u>Doctor's Assoc, Inc. v. Casarotto</u>
517 U.S. 681 (1996)……………………………………………………………………...  5, 6
<u>EEOC  v. Waffle House, Inc.</u>
534 U.S. 279 (2002)…………………………………………………………………….  5
<u>First Options of Chicage, Inc. v. Kaplan</u>
514 U.S. 938 (1995)……………………………………………………………………...  5, 6
<u>Hull v. Norcom, Inc.</u>
750 F.2d 1547 (11th Cir. 1985)……………………………………………………......  7
<u>LAIF X SPRL v. Axtel, S.A. de C.V.</u>
390 F.3d 194 (2nd Cir. 2004)…………………………………………………………..  5
<u>Leasing Service Corp. v. Crane</u>
804 F.2d 828 (4th Cir. 1986)………………………………………………………......  15
<u>Matter of Barone</u>
143 A.D.2d 1008, 533 N.Y.S.2d (2nd Dept. 1998)……………………………………  3, 8
<u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>
473 U.S. 614 (1985)…………………………………………………………………......  5
<u>Morgan Guar. Trust Co. v. Crane</u>
36 F.Supp.2d 602 (S.D.N.Y. 1999)…………………………………………………......  15
<u>Newman v. Hooters of America, Inc.</u>
2006 WL 1793541 (M.D. Fla. June 28, 2006)………………………………………….  8
<u>Revson v. Cinque & Cinque, P.C.</u>
221 F.3d 59 (2nd Cir. 2000)………………………………………………………….  13
<u>Shroyer v. New Cingular Wireless Servs., Inc.</u>
498 F.3d 976 (9th Cir. 2007)…………………………………………………………...  7
<u>Tilton, S.A. v. Prudential-Bache Securities, Inc.</u>
--- F. Supp. ---, Fed. Sec. L. Rep. ¶93, 241, 1987 WL 4704 (S.D.N.Y. 1987)………………..  5, 7, 8
<u>U.S. v. Stein</u>
452 F.Supp.2d 230 (S.D.N.Y. 2006)……………………………………………………  5
<u>U.S. v. Stein</u>
486 F.3d 753 (2nd Cir. 2007)………………………………………………………….  5
<u>Valsana, S.A. v. Merrill Lynch</u>
1987 WL 6908 (S.D.N.Y. February 10, 1987)…………………………………………..  12

## INTRODUCTION AND SUMMARY

The issue of arbitration first came up in this matter when Defendant's counsel forwarded to the undersigned a 6-page document, stating that this was the arbitration agreement between Plaintiff and Defendant. Upon close examination, the first and last pages were different in layout, font, and page numbering. Reading the document in full revealed that the text did not flow from page 1 to page 2, nor from page 5 to the last page, but rather broke off in mid-sentence. The first page has a faxline at the top indicating it was the 1st page faxed, the last page had a faxline indicating it was the 3rd page faxed, but the pages in between had no faxline at all. We were left to conclude not only that: (1) Defendant had silently inserted non-conforming pages from some other document between the first and last pages, but also, based on the faxlines, (2) Defendant had removed a page from the middle of the actual document.

When confronted, Defendant admitted that the document was "missing" pages, and claimed not to know where they were. But Defendant insisted that it did not matter that pages were missing because: (1) the Court could enforce the document despite the missing pages, or (2) the missing pages can be "filled in" by reference to a "standard form" of arbitration agreement in use by Defendant at that time. Defendant continues to cling to these arguments in its motion, and they are addressed at length below, but it is very important to recognize that its supporting Declaration of Mary Sculley ("Sculley Decl.") clearly admits that the only thing found in Mr. Dreyfuss' personnel file was the two loose pages attached as Exhibit F.[1]

---

[1] It is now undeniable what happened here: Defendant went to the Dreyfuss personnel file, found the two loose pages, and then, realizing that it needed a complete contract and did not have one, went to other files, took out the middle pages, inserted them between the two loose pages and tried to pass them off as Plaintiff's arbitration agreement. Indeed, even on this motion, the Scully Declaration and its Memorandum are awash in the "filler" pages from a couple of other employees' files in an attempt to lead the Court into believing those pages were associated with Mr. Dreyfuss's file. It takes a careful reading to see that the only "arbitration agreement" Ms. Sculley was willing to swear "was contained in Mr. Dreyfuss's personnel file" consisted solely of the two loose pages attached as Exhibit F.

Defendant's first assertion is a question of law:  by submitting a contract with pages containing material terms admittedly missing, has Defendant met its burden as the party moving to enforce it?  Defendant cited a single case in support of its position that it has.  However, at the pre-motion conference, the cited case—<u>Matter of Barone</u>, 143 A.D.2d 1008, 1009, 533 N.Y.S.2d 611, 611-12 (2nd Dept. 1998)—was seen to be entirely off-point.  The Court gave Defendant an additional two weeks to submit its motion with the express instruction to cite cases supporting its position that submission of a couple of pages is enough to get enforcement of a whole contract.

The motion has now been submitted, but it contains no such cases.  This is because none exist.  As explained below, the cases hold that Defendant has simply not met its well-established burden of producing the written contract it wants enforced and any other ruling will make new and bad law that will: (1) undermine the salutary purposes of time-tested evidentiary burdens, and (2) destabilize written contracts by encouraging litigants to permit unwanted pages to "go missing" while resting assured that the rest of the document will be nonetheless enforceable.  See Part I, *infra*.

Defendant's second assertion is factually false and demonstrably so.  First, Defendant submitted two assertedly "standard" arbitration agreements that it unilaterally chose from its files.  Yet even those two agreements are different from one another.  The Court then Ordered limited discovery on this issue, requiring Defendant to produce the arbitration agreement for the 29 active employees hired during the relevant period.  Just six such agreements were produced pursuant to the Court's Order, disclosing a broad variation among arbitration agreements, some only a paragraph long, others several pages, and leading to the conclusion that 23 of the 29 employees did not have arbitration agreement at all.  Accordingly, the evidence overwhelmingly shows that there was *no* "standard" arbitration agreement in effect—indeed, most employees had

none—and Defendant will not be heard to argue that the Court should simply "import" the pages or any such agreement to "fill in" Defendant's "missing" pages.  See Part II, *infra*.

In any event, the parties' 2006 written agreement, drafted by Defendant, expressly provided that "[a]ll previous commission, compensation, bonus or individual agreements, understandings, arrangements and plans are terminated as of January 1, 2006." Thus, even if Defendant were to submit the "missing pages" of a 2004 document it seeks to enforce, any such agreement will have been terminated by Defendant as of January 1, 2006.  See Part III, *infra*.

Finally, Defendant's motion to strike Plaintiff's jury demand fails for the same reasons as its motion to compel arbitration—Defendant is asking that the Court sanction its cherry-picking of terms from the contract page it chooses to submit and ignore the fact that most of the terms are "missing." Defendant isolates this term from the rest of the alleged agreement, which by Defendant's own premise the Court has already rejected, and serves it up for the Court to enforce in a vacuum.  Neither contract law nor jury trial waiver works like this.  See Part IV, *infra*.

## SUBSTANTIVE BACKGROUND

Plaintiff James Dreyfuss was a commission salesman for the Defendant, selling its outsourced phone bank services to large companies.  Due to the overseas and technology aspects of the services, this industry requires a long sales cycle and implementation period, typically  1 to 2 years.  Defendant's salesmen, like Mr. Dreyfuss, perform their work during that 1-2 year period.  Their commissions, however, are paid only upon Defendant's receipt of revenues.  After working for Defendant for 2.5 years, Mr. Dreyfuss was its second-highest producing salesman; his sales were about to generate substantial revenues and, therefore, commissions.  That was when Defendant fired Mr. Dreyfuss—along with Defendant's top producing salesman on the same day—without warning.  Defendant has enjoyed eight-figure revenues from the major

clients Mr. Dreyfuss brought in, but has refused to pay Mr. Dreyfuss any of his commissions due.

## ARGUMENT

## I.

## DEFENDANT HAS FAILED TO MEET ITS BURDEN TO PRODUCE THE ARBITRATION AGREEMENT IT IS SEEKING TO ENFORCE.

It is axiomatic that "[t]he party seeking to compel arbitration must bear the burden of demonstrating the existence of an agreement by the parties to arbitrate their dispute." E.g., Tilton, S.A. v. Prudential-Bache Securities, Inc., --- F. Supp. ---, Fed. Sec. L. Rep. ¶93,241, 1987 WL 4704 (S.D.N.Y. 1987); U.S. v. Stein, 452 F. Supp.2d 230, 247-48 & n.46 (S.D.N.Y. 2006) (collecting cases), *vacated on other grounds*, 486 F.3d 753 (2nd Cir. 2007). As this Court in Stein explained the general principles applicable to motions to compel arbitration:

> "The FAA established an 'emphatic federal policy in favor of arbitral dispute resolution.' *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Nevertheless, 'arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration.' *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Hence, issues as to the existence and validity of an agreement to arbitrate always are for courts, not for arbitrators. *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004). Moreover, notwithstanding the federal policy in favor of arbitration, the FAA places contracts requiring arbitration 'on equal footing with all other contracts.' *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). … Moreover, agreements to arbitrate under the FAA are subject to avoidance 'upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. §2; see also *Doctor's Assoc, Inc. v. Casarotto*, 517 U.S. 681, 686-87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ('[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening §2 [of the FAA]')."

Id.

The teaching of these general principles on the question of the movant's burden is that the movant must produce or otherwise prove all of the terms of its alleged arbitration agreement. This is because:

- the Court is empowered to compel arbitration "of those disputes—but only those disputes—that the parties have agreed to submit to arbitration" (First Options, 514 U.S. at 943), and therefore the Court (and Plaintiff) must be shown the complete alleged agreement in order to be able to analyze what, if any, disputes the parties agreed to arbitrate and whether the instant dispute is among them;

- the Court is empowered to "void[ an arbitration agreement] upon such grounds as exist in law or in equity for revocation of any contract" (Casarotto, 517 U.S. at 686-87), including "defenses such as … unconscionability" (id.), and therefore the Court (and Plaintiff) are entitled to know *all* of the terms of the alleged agreement to be able to analyze whether it is subject to any of the contract defenses such as lack of consideration, prior breach by the movant, non-occurrence of a condition precedent, waiver, unconscionability, etc.

These are the very reasons for procedural burdens, such as the one imposed on those seeking arbitration. In order to invoke the power of the courts, a party must come forward with the materials or information needed for the courts to analyze the questions present by the movant. Imagine the mischief and manipulation of the legal system that would be encouraged if contract plaintiffs were not required to produce the alleged contract or otherwise prove all of its terms.

Here, the first page submitted by Defendant cuts off in mid-sentence in a subsection entitled "Claims Covered by the Agreement." This is the very first issue in the analysis articulated by the Supreme Court in the cases cited above—whether the claims asserted in the

Complaint in the action fall within those agreed to be arbitrable alleged arbitration agreement. Yet how can these determinations be made when the definition of the "Claims Covered by this Agreement" is incomplete or "missing?"

Even the terms that *do* appear on the loose page under this subheading serve to beg this question—the last line of its first paragraph expressly excludes from any arbitration "claims excluded elsewhere in this Agreement." Scully Aff Ex. F at 1. How is the Court (and Plaintiff) expected to analyze those?

The answer is that we cannot. The Supreme Court's analysis for motions to compel arbitration is shut down at its first step. This is one obvious reason why Defendant cannot be said to have carried its burden to place before the Court (and Plaintiff) the contract it seeks to enforce.

Even if the Court were somehow able to get past the threshold question of arbitrability, Plaintiff is entitled under the Supreme Court's analysis to assert any and all contract defenses available to a motion to compel arbitration. Without access to the complete alleged agreement, Plaintiff cannot know its terms and whether Defendant has already breached any of them precluding its enforcement, nor whether it was supported by consideration (see Hull v. Norcom, Inc., 750 F.2d 1547 (11th Cir. 1985)(arbitration agreement invalid for lack of consideration)), nor its burdens and whether they are unconscionable (see Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d 976 (9th Cir. 2007)(arbitration agreement unconscionable)), and so on. This is another way to see that the movant's burden of placing the written contract before the Court cannot simply be dispensed with and has not been met in this case.

This is why courts have consistently held that a party "cannot be compelled to arbitration of its claims on the basis of a clause that the defendant cannot produce." Tilton, S.A. v. Prudential-Bache Securities, Inc., --- F. Supp. ---, Fed. Sec. L. Rep. ¶93,241, 1987 WL 4704

(S.D.N.Y. 1987); <u>Newman v. Hooters of America, Inc.</u>, 2006 WL 1793541 *1-2 (M.D. Fla. June 28, 2006) (holding that "arbitration should not be compelled because Defendants cannot produce the arbitration agreement").

In <u>Tilton</u>, this Court explained:

> "[t]he party seeking to compel arbitration must bear the burden of demonstrating the existence of an agreement by the parties to arbitrate their dispute. <u>Ahn v. Rooney, Pace Inc.</u>, 624 F. Supp. 368, 369-70 (S.D.N.Y. 1985). Neither of the parties to this action have submitted the original agreement or a copy containing the page on which the arbitration clause is allegedly found. Prudential has not denied Tilton's statement that the Command Agreement was within its exclusive control. We hold therefore that Prudential has failed to meet its burden and that Tilton cannot be compelled to arbitration of its claims on the basis of a clause that the defendant cannot produce."

<u>Id.</u> at *1.

Defendant has cited no case to the contrary, despite the Court's express direction to do so. Defendant first cited <u>Matter of Barone</u>, 143 A.D.2d 1008, 1009, 533 N.Y.S.2d 611, 611-12 (2nd Dept. 1998)—but it badly misreads this case. Defendant's description of this case suggests arbitration was compelled where 10 of 12 pages of the arbitration agreement were missing. Deft. Mem. at 5-6. In fact, in <u>Barone</u>, *no* pages were missing at the time of the adjudication; rather, the resisting party alleged that when it had assumed the agreement, it *saw* only 2 of its 12 pages and therefore did not see its arbitration clause. <u>Id.</u>

Defendant also cited <u>Deputy v. Lehman Bros., Inc.</u>, 374 F. Supp.2d 695 (E.D. Wis. 2005). But in <u>Deputy</u>, the Court had before it a "standard Lehman agreement" containing a copy of the "contested arbitration clause." <u>Id.</u> at 700. The Plaintiff in <u>Deputy</u> did not contest that the "standard Lehman agreement" mirrored her own. As the court explained:

> "Deputy's signature acknowledges that the parties agreed to an arbitration provision as part of their agreement. Deputy *could* contest what, exactly, that provision stated, but she has not advanced this argument."

8

Id. at 701 (emphasis in original).

Here, of course, Mr. Dreyfuss expressly contests what, exactly, the provision proffered by Defendant states by pointing out that Defendant has failed the meet its burden of producing the written agreement, leaving the Court (and Plaintiff) unable to determine what is and is not arbitrable under it and what defenses apply.  In all events, as explained below, there is no "standard" eTelecare arbitration agreement.  Rather, discovery has revealed that eTelecare employees from the relevant time period had many different arbitration agreements or clauses and that most had no arbitration agreement or clause at all.  Jakab Decl. Ex. A.

ETelecare has not been able to cite a case for the proposition that a written contract—for arbitration or otherwise—can be enforced based on submission of just a couple of its pages because there *is* no case that would uphold this highly questionable proposition of law.  Instead, Defendant is asking this Court to *make* such law.

The Court should decline this invitation because what Defendant is asking for would make bad law, indeed.  To accept Defendant's position and turn it into precedent would be to incentivize litigants to allow the pages containing the unwanted terms of their contracts to go missing, knowing they can enforce the pages they keep.  It goes without saying that bench, bar and scholar alike would condemn such a precedent because to do away with the time-tested and universal evidentiary burden that the enforcing party produce the written agreement would destabilize contracts into loose bundles of ever-shifting terms, each capable of appearing and disappearing at their master's pleasure.

## II.

### DEFENDANT HAS FAILED TO ESTABLISH THAT
### IT HAD A "STANDARD" AGREEMENT IN FORCE.

In its Memorandum of Law, Defendant writes:

"eTelecare has provided unrefuted evidence that the arbitration agreement Plaintiff signed was the standard form 'Mutual Agreement to Arbitrate' that was in effect in 2004, when Plaintiff executed his agreement. (Sculley Decl. ¶¶5, 9 11, Exh. C.) The company did not use any other form of arbitration agreement at the time, and there is no evidence Plaintiff received anything other than the standard eTelecare form." (emphasis added)

Defendant goes on to argue and cite case law to urge the Court to "import the missing pages from **eTelecare's standard agreement** in 2004." Deft. Mem. at 8-9 (emphasis added).

This turns out to have been wishful briefing because following discovery, the evidence shows precisely the contrary—disparate arbitration terms for those that have any at all, with most employees having agreed to *no* arbitration agreements of any kind. The Court observed that this aspect of Defendant's motion is really a sideshow with no bearing on the question before the Court (Jakab Decl. Ex. B at 11), which is whether Defendant's submission of two pages of an alleged multi-page arbitration agreement meets its burden under the FAA and the case law applying it, all as set forth in the preceding subsection. Nonetheless, it merits a brief look at how the evidence forecloses any rational inference of a "standard form."

Defendant's Sculley Affidavit contains two documents that Defendant puts forward as arbitration agreements between it and two employees during the 2002-2004 time period. It is on the basis of these two documents that Defendant makes the claim, quoted above, that it used a "standard form of Mutual Agreement to Arbitrate that was in effect in 2004, when Plaintiff executed his agreement." Deft. Mem. at 8-9. But a look at those two documents reveals that

10

there is nothing standard about them at all.  To the contrary, they contain major differences on virtually every page.  Scully Aff. Ex. C.  Here are just some examples:

- The Cotter agreement calls for the application of California law, whereas the Alvarado agreement does not; (pg 1)

- The Cotter agreement contains a seven-line paragraph of "Claims not Covered by the Agreement," whereas the Alvarado agreement has no such carve out; (pg 2)

- The Cotter agreement calls for arbitration to take place in the city in which he was employed, whereas the Alvarado agreement has no such restriction; (pg 3)

- The Cotter agreement has a fee shifting provision on certain motions to the arbitrator, whereas the Alvarado agreement does not; (pg 4)

- The Cotter agreement calls for equal sharing of the costs and fees of arbitration to a limit, whereas the Alvarado agreement provides that eTelecare will pay the costs and fees; (pg 4)

If an arbitration agreement Defendant tried to enforce against Mr. Dreyfuss purported to apply California law or permit a non-New York venue, it would be invalid because Mr. Dreyfuss's employment was in New York.   Likewise, if such an agreement burdened Mr. Dreyfuss with unreasonable expenses or fee-shifting provisions, it would be invalid as well.  Of course, if such an agreement listed any of the claims in this action under the heading "Claims not Covered by the Agreement," Defendant could not bring this motion.  But Defendant has foreclosed all inquiry into such analyses and defenses in Mr. Dreyfuss's case by the simple expedient of not submitting the alleged agreement's terms.   In all events, it is apparent that there was no "standard form," even among the agreements submitted by Defendant.

But the discovery Ordered by the Court yielded even more compelling evidence—not only of the complete lack of a "standard" in Defendant's arbitration agreements, but of the

complete lack of *any* arbitration agreement for the overwhelming majority of employees. In the discovery conference, Defendant represented that there were some active 29 employees hired during the relevant period. Jakab Decl. Ex. B at 10-11. The Court Ordered the arbitration agreements for those employees to be produced. In response, Defendant has produced a total of six (6) arbitration agreements or clauses, establishing that 23 of the 29 such employees had no arbitration agreements or clauses at all. Of the six documents produced:

- Mr. Phippard's is identical to Mr. Cotter's;

- Ms. Lindsay's is substantially similar, though not identical, to Mr. Cotter's;

- Messrs. Kreitzman, Ouradnik, Sese and Stitzer apparently had agreements consisting of a one-paragraph arbitration clause calling for arbitration in Phoenix, Arizona, requiring consent to personal jurisdiction in the courts of that state and containing none of the terms found in the agreement attached to the Sculley Declaration.

Jakab Decl. Ex. A.

In <u>Valsana, S.A. v. Merrill Lynch</u>, 1987 WL 6908 (S.D.N.Y. February 10, 1987), this Court rejected just what the Defendant here is trying to do—cobble together other people's diverse documents for the inference that Plaintiff's must have been similar.

> "The exhibits submitted by the defendant seem to include every combination of signed and unsigned documents which alternatively include and lack an arbitration agreement…. The Court declines to patch together a document that evidently is missing….Because the defendant has failed to meet its burden of showing the existence of an agreement to arbitrate, its motion to stay this proceeding and compel arbitration is denied."

<u>Id.</u> at *2.

In sum, the evidence is overwhelming, and the conclusion inescapable, that Defendant had neither a standard form of agreement in use during the relevant period nor even a policy requiring arbitration agreements for its employees.

### III.

### ANY 2004 INDIVIDUAL AGREEMENT WAS  EXPRESSLY TERMINATED BY THE PARTIES' 2006 AGREEMENT.

In late 2006, Defendant imposed new written agreements on all its sales employees and the parties entered into a new written agreement governing their relationship.  Jakab Dec. Ex. C. The parties' 2006 written agreement, drafted by Defendant, expressly provided that "[a]ll previous commission, compensation, bonus or individual agreements, understandings, arrangements and plans are terminated as of January 1, 2006."  This is broad language, drafted by the Defendant and not subject to negotiation.  The alleged arbitration agreement certainly comes within Defendant's terms "individual agreements, understandings, arrangements," and any ambiguity should be construed against the drafter.  E.g., Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 67 (2d Cir. 2000).

Discovery Ordered by the Court has revealed that Defendant did in fact engage in the practice of including an arbitration clause directly within the compensation agreement of numerous employees when it so desired.  Jakab Decl. Ex. A (Messrs. Kreitzman, Ouradnik, Sese and Stitzer).  Thus, it cannot be said, as Defendant argued in the pre-motion conference, that the 2006 agreement did not concern the subject of arbitration.  Defendant's failure to include an arbitration clause in the 2006 agreement is probative of its intent not to have one.

13

Nor is there anything in the two pages submitted by Defendant as the Plaintiff's arbitration agreement (Sculley Decl. Ex. F) to preclude its termination or modification by the parties' 2006 agreement.  In reviewing the other employees' arbitration agreements, a couple contain a clause that provides "[i]t can only be revoked or modified by a writing signed by the parties, which specifically states an intent to revoke or modify this Agreement."  Id.  However, most of the other employees' arbitration agreements contain no such clause (Jakab Decl. Ex. A), and neither of the two pages submitted by Defendant as Mr. Dreyfuss's alleged agreement contains any such clause.  Sculley Decl. Ex. F.

Accordingly, the plain language, the evidence of Defendant's other agreements, and settled principles of contract interpretation all compel the conclusion that any 2004 arbitration agreement was terminated by the parties' 2006 agreement and Defendant cannot now be heard to try to enforce it.

## IV.

### THE JURY DEMAND HAS NOT BEEN WAIVED.

Finally, Defendant argues that "[e]ven if the Court were to disregard the parties' agreement to arbitrate … the jury trial waiver that Plaintiff executed should be enforced."  Deft. Mem. at 11.

First, this argument falls under the weight of its own premise.  Defendant's stated premise—that the Court has ruled against Defendant on the agreement to arbitrate—operates to invalidate any "jury trial waiver" contained in the same document, or more precisely, two loose pages.  For if Defendant has failed to meet its burden of producing a written contract or proving all its terms, the Court is no more empowered to enforce the jury trial waiver than compel

arbitration. Thus, the jury trial waiver cannot be enforced in this record for all the same reasons set forth in Parts I, II and III, above.

Second, Defendant acknowledges that the standard for a jury trial waiver is that it must be "knowing and voluntary." Deft. Mem. at 11. It is well-established that Defendant, as the movant, bears the burden of establishing this. E.g., Leasing Service Corp. v. Crane, 804 F.2d 828, 832-22 (4th Cir. 1986). Defendant, however, have made no factual showing that Mr. Dreyfuss waived his jury trial right either "knowingly" or "voluntarily." Just the opposite is true.

The record here discloses that Defendant hired Mr. Dreyfuss in April 2004. Then, once lured away from his prior employment, Defendant states that it required him to sign, as a non-negotiable condition of his continued employment, certain documents including the one Defendant claims as the jury trial waiver. That document bears a date of July 2004. Notably, Mr. Dreyfuss's offer of employment makes no reference to any jury trial waiver. Sculley Decl. Ex. A. Instead, Defendant states that it required this of Mr. Dreyfuss only after he had quit his prior employment and started with Defendant. This conduct leaves an employee with no meaningful choice but to sign, since the alternative would be a detriment to his resume and career.

This is hardly the kind of voluntary waiver worthy of the Seventh Amendment. For jury trial waiver purposes, "voluntariness" is assessed using factors such as "(1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; (2) the conspicuousness of the waiver provision in the contract; (3) the relative bargaining power of the parties; and (4) the business acumen of the party opposing the waiver." Morgan Guar. Trust Co. v. Crane, 36 F.Supp.2d 602, 603-04 (S.D.N.Y. 1999). Here, Defendant has not carried its burden on any of these factors. To the contrary, the record is that there *was* no negotiation nor negotiability, that this requirement was first raised a couple of months into Plaintiff's

15

employment, when an employee has minimum bargaining power because he does not want to be seen as having left a job just two months after having started.

In sum, the jury trial waiver sought by Defendant fails not only for the reasons stated in the Parts I, II and III, above, but also because Defendant has failed to carry its burden of establishing that any claimed waiver was "knowing and voluntary."

**CONCLUSION**

For all the reasons stated, Defendant's motion to compel arbitration or, in the alternative, to strike Plaintiff's demand for jury trial should be denied in its entirety.

Dated:      New York, New York
             July 9, 2008             Respectfully,

                                         FEIN & JAKAB
                                         THE WOOLWORTH BUILDING
                                         233 Broadway • Suite 930
                                         New York, NY 10279
                                         (212) 732-9290

                                         By: _____/s/_____.
                                              PETER JAKAB (PJ-8553)

                                         *Attorneys for Plaintiff*
                                         JAMES DREYFUSS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of July, 2008, I caused to be mailed a true and correct copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Motion to Compel Arbitration or Strike Demand for Jury Trial and Declaration of Peter Jakab in support of the Opposition to Compel Arbitration or Strike Demand for Jury Trial via first class U.S. mail, postage prepaid, to the following:

LITTLER MENDELSON, P.C.
Andrew P. Marks
Deke W. Bond
885 Third Avenue
New York, New York 10022-4834

_____/s/_____
PETER JAKAB



Tilton, S.A. v. Prudential-Bache Securities, Inc.
S.D.N.Y., 1987.

United States District Court, S.D. New York.
TILTON, S.A., Plaintiff,
v.
PRUDENTIAL-BACHE SECURITIES, INC.,
Defendant.
**No. 85 Civ. 8788 (MJL).**

March 24, 1987.

ROBERT J. KAPLAN, New York City, for plaintiff.
GRAIS & RICHARDS, New York City BY LEE S.
RICHARDS, for defendant.

MEMORANDUM OPINION AND ORDER

LOWE, District Judge.
**\*1** Defendant Prudential-Bache Securities, Inc.
('Prudential') moves under the Federal Arbitration
Act, 9 U.S.C. §§ 1et seq., to compel arbitration of the
plaintiff's state and common law claims. In addition,
Prudential moves to stay discovery on plaintiff's one
federal claim until an arbitrator can rule on the state
and common law claims.

FACTS

In July 1984, plaintiff Tilton, S.A. ('Tilton')
deposited $555,000 with Prudential. Soon after,
Tilton opened a discretionary account with Prudential
and executed an 'Option Client Information Form
and Agreement', (the 'Option Agreement'). Tilton
then executed another account agreement entitled
'Corporate Command Account Agreement', (the
'Command Agreement'). Tilton gave Prudential a
power of attorney enabling Prudential to exercise its
own discretion when trading Tilton's account.

In November 1985, Tilton filed its complaint in this
Court alleging that Prudential violated Tilton's
instructions to acquire low risk securities. Tilton
further contends that Prudential churned plaintiff's
account. Plaintiff asserts in its first claim that
Prudential's alleged churning constitutes a violation
of Section 10(b) of the Securities Exchange Act of

1934, 15 U.S.C. Section 78j(b) and Rule 10b-5
promulgated thereunder, 17 C.F.R. Section 240.10b-
5. In addition, Tilton asserts various violations of
state and common law, including churning, common
law fraud, breach of fiduciary duty, breach of
contract and improper receipt of funds.

DISCUSSION

A. Arbitration of Plaintiff's State and Common Law
Claims

Defendant argues that plaintiff's state and common
law claims are arbitrable under the broad arbitration
clause of the Command Agreement and the
arbitration clause contained in the Option Agreement.
Plaintiff opposes the motion on the grounds that (1) it
never saw or signed an arbitration clause in the
Command Agreement and (2) the Option Agreement
is too narrow to encompass its claims.

1. The Command Agreement

Prudential argues that Tilton's state and common law
claims should be arbitrated in accordance with the
broad language of the Command Agreement. Tilton
responds that it cannot be bound to the arbitration
clause which is allegedly contained in the Command
Agreement because Prudential has not been able to
produce the original agreement or a copy containing
that clause. Prudential argues that the arbitration
clause in question is standard in its corporate
command account agreements.

The party seeking to compel arbitration must bear the
burden of demonstrating the existence of an
agreement by the parties to arbitrate their
dispute.Ahn v. Rooney, Pace Inc., 624 F. Supp. 368,
369-370 (S.D.N.Y. 1985). Neither of the parties to
this action have submitted the original agreement or a
copy containing the page on which the arbitration
clause is allegedly found. Prudential has not denied
Tilton's statement that the Command Agreement was
within its exclusive control. We hold, therefore, that
Prudential has failed to meet its burden and that
Tilton cannot be compelled to submit to arbitration of
its claims on the basis of a clause that the defendant

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3
Not Reported in F.Supp., 1987 WL 4704 (S.D.N.Y.), Fed. Sec. L. Rep. P 93,241
**(Cite as: Not Reported in F.Supp., 1987 WL 4704 (S.D.N.Y.))**

cannot produce.

### 2. The Option Agreement

**\*2** Prudential argues that even if Tilton did not agree to arbitrate its claims under the Command Agreement, they are covered by the arbitration clause of the Option Agreement. That clause contained the following language: '. . . any dispute or claim between us . . . relating to the purchase, sale, handling, execution or endorsement of puts and calls,' (emphasis omitted) is arbitrable.

The plaintiff contends that its churning claims are beyond the scope of the arbitration clause contained in the Option Agreement since the clause mandates arbitration of claims involving only the trading of puts and calls, or option trading. The plaintiff explains that in order to show churning, the Court must examine the total number of transactions in an account over a particular period of time in light of Tilton's investment objectives. Tilton argues that by focusing on options trading alone, the Court or an arbitrator would be unable to determine whether excessive commissions were generated. Tilton takes the position that while options trading may not reflect churning, the account as a whole may still have been churned.

We agree with Tilton only insofar as it states a claim of churning which is predicated upon excessive trading in options and other securities or other securities alone. Tilton has failed to particularize which specific types of trades it claims were excessive. In fact, Tilton has not appended any account statements or other records of his trading activity to his complaint.'Where a plaintiff alleges churning, 'the nature, amount and dates of securities transactions must be included in the complaint.'Higgins v. Merrill Lynch, Pierce Fenner & Smith, Inc., [1982-1983 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶99,242 (S.D.N.Y. June 20, 1983) citing Todd v. Oppenheimer & Co., 78 F.R.D. 415, 423 (S.D.N.Y. 1978). Tilton will be granted thirty (30) days to amend its complaint to specify the basis for its churning claim and to append its records. If the plaintiff's amended complaint reflects that Tilton's allegations are based upon options trading alone, Prudential is entitled to proceed to arbitration.

Tilton also contends that its claim that Prudential

failed to follow instructions is outside the scope of the Option Agreement's arbitration clause. Again Tilton has failed to identify whether those instructions are related to options or other trading. Insofar as Tilton alleges that only Prudential's options transactions violated Tilton's instructions, that claim is arbitrable. Plaintiff will similarly be granted thirty (30) days to amend its complaint to specify the basis of its claim that instructions were violated.

Prudential is granted twenty (20) days from the date of service of the amended complaint to answer or renew its motion to compel arbitration.

### B. The Stay of the Federal Claim

The parties do not dispute that even under the broad language of the Command Agreement the federal claim is nonarbitrable. This Court defers ruling on the defendant's motion to stay on the federal claim until we can determine whether plaintiff's state and common law claims are predicated upon options trading only, transactions involving options and other securities, or trading in other securities alone. The motion to stay will be relevant only upon this Court's conclusion that Tilton's state and common law claims derive from options trading and must therefore be submitted to arbitration.

### CONCLUSION

**\*3** To summarize, defendant Prudential's motion to compel arbitration of the claims under the Command Agreement is denied. Defendant's motion to stay the federal claim is deferred until plaintiff Tilton amends its complaint to allege the specific type of transactions which form the basis for its state and common law claims. Tilton is instructed to append records of the trading in its account in support of its amended complaint. Prudential is granted twenty (20) days from the date of service to answer or renew its motion to compel arbitration under the Option Agreement and stay the federal claim.

It Is So Ordered.

S.D.N.Y., 1987.
Tilton, S.A. v. Prudential-Bache Securities, Inc.
Not Reported in F.Supp., 1987 WL 4704 (S.D.N.Y.),
Fed. Sec. L. Rep. P 93,241

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                  Page 4
Not Reported in F.Supp., 1987 WL 4704 (S.D.N.Y.), Fed. Sec. L. Rep. P 93,241
**(Cite as: Not Reported in F.Supp., 1987 WL 4704 (S.D.N.Y.))**


END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

Not Reported in F.Supp.2d                                                        Page 2
Not Reported in F.Supp.2d, 2006 WL 1793541 (M.D.Fla.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1793541 (M.D.Fla.))**

Newman v. Hooters of America, Inc.
M.D.Fla.,2006.
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.
Brandi NEWMAN, Plaintiff,
v.
HOOTERS OF AMERICA, INC., a Georgia
Corporation, and Hooters of Lakeland, LLC., a
Georgia Limited Liability Company, Defendants.
**No. 8:06-CIV-364-EAK-TGW.**

June 28, 2006.

Travis William Trueblood, Law Office of Scott
Travis Trueblood, Lakeland, FL, for Plaintiff.
Alisa L. Pittman, Elarbee, Thompson, Sapp &
Wilson, LLP, Atlanta, GA, Richard M. Pierro, Jr.,
Allen, Norton & Blue, P.A., Tampa, FL, for
Defendants.

### ORDER ON DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY ACTION AND COMPEL ARBITRATION

ELIZABETH A. KOVACHEVICH, District Judge.
**\*1** This cause comes before this Court on the
Defendants' Motion to Dismiss or, Alternatively, to
Stay Action and Compel Arbitration made pursuant
to Fed.R.Civ.P. Rule 12(b)(6), filed on April 10,
2006 (Docket No. 6), and Plaintiff's response thereto,
filed on April 21, 2006, (Docket No. 12). For the
reasons set forth below, this motion is **DENIED.**

### BACKGROUND

Plaintiff, Brandi Newman (Plaintiff), became an
employee of Hooters of America and Hooters of
Lakeland (Defendants) on or about August 1, 2000.
At this time, Defendants assert that they required
each applicant to complete an Employment
Application which informed the applicant that there
existed an arbitration clause, to which the applicant
had to agree in order to be considered for
employment. Each applicant was allegedly also
required to complete a New Hire Packet which
included, *inter alia,* an Arbitration Agreement as well

as a Notice to Applicants regarding the Arbitration
Agreement. The Agreement provides in relevant part:

By signing this Agreement, you and the Company
each agree that all Claims between you and the
Company shall be exclusively decided by arbitration
governed by the Federal Arbitration Act before one
or more NEUTRAL ARBITRATORS AND NOT
BY A COURT OR A JURY. (Original Emphasis).

The Agreement then explains what is meant by the
word "Claims" as it is used in the Agreement:
The term 'Claims' includes, but is not limited to, any
claim whether arising under federal, state, or local
law, under a statute such as Title VII of the Civil
Rights Act of 1964, under a rule, under a regulation,
or under the common law, including but not limited
to, ANY CLAIM OF DISCRIMINATION, SEXUAL
HARASSMENT,        RETALIATION,        OR
WRONGFUL DISCHARGE. (Original Emphasis).

On March 7, 2006, Plaintiff filed a complaint against
the Defendants, alleging violations of Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. §
2000(e), *et seq.* (Docket No. 1), asserting claims
based on sex discrimination, retaliation, and
constructive discharge.

### DISCUSSION

Defendants assert that Plaintiff's claim should be
dismissed because the Arbitration Agreement is
governed by, and enforceable under, the Federal
Arbitration Act (FAA). In the alternative, Defendants
request that action be stayed and arbitration
compelled. Plaintiff argues in response that
Defendants fail to meet the high standard of
Fed.R.Civ.P. 12(b)(6) and that arbitration should not
be compelled because Defendants cannot produce the
Arbitration Agreement necessary to implicate the
FAA.

### I. Motion to Dismiss

It is a well-established principle "that a complaint
should not be dismissed for failure to state a claim
unless it appears beyond doubt that the plaintiff can

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 3
Not Reported in F.Supp.2d, 2006 WL 1793541 (M.D.Fla.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1793541 (M.D.Fla.))**

prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Defendants have not established that Plaintiff can prove no set of facts which would entitle her to relief. In fact, Defendants do not argue that Plaintiff's claim was insufficient, only that it is subject to an alleged arbitration agreement and, therefore, not properly heard in this Court. It is the conclusion of this Court that dismissal of Plaintiff's claim would be inappropriate under these circumstances.

**I. Motion to Stay Action and Compel Arbitration**

**\*2** The FAA, 9 U.S.C. § 1, *et. seq.,* provides a body of substantive federal law that controls all of the issues regarding the validity and enforcement of covered arbitration agreements. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218-21 (1985). In order to implicate the FAA, there must exist between the parties a contractual relationship memorialized in a written agreement. *See* 9 U.S.C. §§ 2-4.

Section 4 of the FAA grants district courts the authority to compel arbitration "upon being satisfied that the making of the agreement or the failure to comply therewith is not an issue." 9 U .S.C. § 4. Defendants have not presented the alleged Arbitration Agreement, and, instead, ask the Court to make factual inferences to establish the existence of this Agreement. Defendants contend that all employees were required to complete an Employment Application and New Hire Packet containing the Arbitration Agreement and, therefore, the Plaintiff must also have executed this Arbitration Agreement or her employment would not have commenced. Under Defendant's reasoning, if Plaintiff began working, then she must have executed an Arbitration Agreement. This Court will not rely on "if, then" scenarios and reverse factual inferences to establish the existence of a contract. At the present time, Defendants have failed to conclusively establish that the Plaintiff executed a written Arbitration Agreement that falls within the scope of the FAA. This Court is not satisfied that the making of the Agreement is not an issue, and, therefore, cannot stay action and compel arbitration.

**CONCLUSION**

Defendants have the burden of producing the Arbitration Agreement and establishing the contractual relationship necessary to implicate the FAA and its provisions granting this Court authority to dismiss or stay Plaintiff's cause of action and to compel arbitration. This Court concludes that at the present time, Defendants have not carried that burden. Accordingly it is

**ORDERED** that the Defendants' Motion to Dismiss or Alternatively, to Stay Action and Compel Arbitration (Docket No. 6) be **DENIED** and the Defendants shall file an answer to this complaint on or before July 10, 2006.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 28th day of June, 2006.

M.D.Fla.,2006.
Newman v. Hooters of America, Inc.
Not Reported in F.Supp.2d, 2006 WL 1793541 (M.D.Fla.)

END OF DOCUMENT



Not Reported in F.Supp.                                                                Page 2
Not Reported in F.Supp., 1987 WL 6908 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp., 1987 WL 6908 (S.D.N.Y.))**

Valsana, S.A. v. Merrill Lynch, Pierce, Fenner &
Smith, Inc.
S.D.N.Y.,1987.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
VALSANA, S.A., Plaintiff,
v.
MERRILL LYNCH, PIERCE, FENNER & SMITH,
INC., Defendants.
**No. 85 Civ. 0943 (JFK).**

Feb. 10, 1987.

Shapiro, Mortman, Schwartz & Greene, New York
City, for plaintiff; Marvin L. Schwartz, of counsel.
Howard G. Meyers, Jr., New York City, for
defendant.

OPINION and ORDER

KEENAN, District Judge.

Background

**\*1** Plaintiff filed suit in this diversity action alleging
that the defendant was negligent, and breached its
fiduciary obligations to the plaintiff. The defendant
has moved to stay the instant proceeding and compel
the plaintiff to arbitrate its claims. The plaintiff
challenges the existence of an arbitration agreement
between the parties. For the reasons set forth below,
the Court denies the defendant's motion.

Facts

The plaintiff is a Panamanian corporation which
entered an agreement with the defendant during
1977. The complaint alleges that under the terms of
the agreement, the defendant was to trade stocks,
commodities and commodity futures for the
plaintiff's account in Zurich, Switzerland. The
defendant was allegedly required to confirm all
transactions with the plaintiff's representative within
a designated period. The plaintiff asserts that late in
1985 the defendant made certain trades on the
plaintiff's account which were not confirmed with the
plaintiff. This action was commenced in which the

plaintiff seeks to recover compensatory and punitive
damages. The defendant has moved to stay the
proceedings, and compel arbitration of the dispute.
The defendant relies on an arbitration agreement that
it alleges was part of its arrangement with the
plaintiff.

DISCUSSION

The defendant makes its motion pursuant to the
Federal Arbitration Act, 9 U.S.C. § 1 (1982). In
pertinent part, the statute empowers a federal district
court to

hear the parties, and upon being satisfied that the
making of the agreement for arbitration or the failure
to comply therewith is not in issue, the court shall
make an order directing the parties to proceed to
arbitration in accordance with the terms of the
agreement.

9 U.S.C. § 4. In determining a motion to compel
arbitration, the threshold question before the court is
the existence of an agreement to arbitrate. See
Janmort Leasing, Inc. v. Econo-Car International,
Inc., 475 F. Supp. 1282, 1288 (E.D.N.Y. 1979). A
party may be compelled to arbitrate a dispute only if
it has agreed to do so because arbitration is a matter
of contract. Banque de Paris Et Des Pays-Bas v.
Amoco Oil Co., 573 F. Supp. 1464, 1469 (S.D.N.Y.
1983). Despite the strong federal policy in favor of
arbitration, see Carcish v. Rederi A/B Nordie, 389
F.2d 692, 696 (2d Cir. 1968), the defendant has the'
initial burden of showing that an arbitration
agreement exists and a stay is warranted. See
Nederlandse Erts-Tankersmaatschappij, N.V. v.
Isbrandtsen Company, Inc., 339 F.2d 440, 442 (2d
Cir. 1964); Penalver v. Compagnie de Navigation
Frutiere, Matouba, 428 F. Supp. 1070, 1072
(E.D.N.Y. 1977). This burden may be met by the
actual production of the arbitration agreement, or by
showing that it was a regular practice of the
defendant to enter into these agreements. This latter
approach is governed by Federal Rule of Evidence
406. After the defendant has met its initial
requirement, the burden shifts back to the plaintiff to
demonstrate a "substantial issue" concerning the
presence of an agreement to arbitrate. See Almacenes

Not Reported in F.Supp.                                                                                          Page 3
Not Reported in F.Supp., 1987 WL 6908 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp., 1987 WL 6908 (S.D.N.Y.))**

Fernandez S.A. v. Golodetz, 148 F.2d 625, 628 (2d Cir. 1945).

**\*2** In this case, the defendant has not met its initial burden. As part of its moving papers the defendant submits various exhibits. One exhibit is the first page of a commodity account agreement containing an arbitration provision. This exhibit however, does not include the document's signature page. See Miles Affidavit Exhibit A. Another exhibit contains the signature of an officer of the plaintiff and is dated April 29, 1977, however, the document does not include an arbitration agreement. See Miles Affidavit, Exhibit B. A third exhibit is the signature page of a commodity account agreement dated "11.8. 1977" and is apparently signed by one of the plaintiff's officers; this page makes no reference to arbitration. See Meyers Affidavit, Exhibit B. From these exhibits, the defendant apparently seeks to infer that plaintiff signed an arbitration agreement. Alternatively, the defendant relies on its statement that to open a commodity account in 1976 it was necessary to sign an agreement containing an arbitration provision. This Court finds the defendant's contentions to be insufficient to satisfy its initial burden.

The exhibits submitted by the defendant seem to include every combination of signed and unsigned documents which alternatively include and lack an arbitration agreement. The one combination apparently lacking is a document signed by the plaintiff that includes an arbitration provision. The Court declines to patch together a document that evidently is missing.

In addition, Federal Rule of Evidence 406 is of no solace to the defendant. While it is submitted by the defendant that commodity accounts opened in 1976 routinely included arbitration agreements, the plaintiff opened its account in 1977. The Court declines to find that such a showing is sufficient to meet the defendant's initial burden.

CONCLUSION

Because the defendant has failed to meet its burden of showing the existence of an agreement to arbitrate, its motion to stay this proceeding and compel arbitration is denied. The parties are to appear for a pretrial conference on March 9, 1987 at 10 a.m.

SO ORDERED.

S.D.N.Y.,1987.
Valsana, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.
Not Reported in F.Supp., 1987 WL 6908 (S.D.N.Y.)

END OF DOCUMENT