LITTLER MENDELSON, P.C.
Andrew P. Marks (AM-0361)
Deke W. Bond (DB-0349)
885 Third Avenue
New York, New York 10022
(212) 583-9600

Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES DREYFUSS,

        Plaintiff,

-against-

ETELECARE GLOBAL SOLUTIONS-US, INC., a
Delaware corporation,

        Defendant.

No. 08-cv-1115 (RJS)

**ECF CASE**

---

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, STRIKE PLAINTIFF'S JURY DEMAND**

TABLE OF CONTENTS

PAGE

SUMMARY OF ARGUMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 5

    I.    THE ARBITRATION PROVISION SIGNED AND SUBMITTED BY PLAINTIFF, STANDING ALONE, CONSTITUTES A VALID AND BINDING AGREEMENT TO ARBITRATE ....................................................... 2

    II.    THE 2006 INCENTIVE BONUS PROGRAM DOCUMENT DID NOT TERMINATE THE PARTIES' ARBITRATION AGREEMENT ....................... 9

    III.    THE JURY TRIAL WAIVER IS VALID AND ENFORCEABLE..................... 9

CONCLUSION ............................................................................................................................ 11

TABLE OF AUTHORITIES

PAGE(S)

*ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24 (2d Cir. 2002) ..... 7

*Acequip Ltd. v. American Eng. Corp.*, 315 F.3d 151 (2d. Cir. 2003) ..... 8

*Ahing v. Lehman Bros.*, 2000 U.S. Dist. LEXIS 5175 (S.D.N.Y. Apr. 20, 2000) ..... 10

*Arakawa v. Japan Network Group*, 56 F. Supp. 2d 349 (S.D.N.Y. 1999) ..... 10

*Bolduc v. Bridgestone/Firestone, Inc.*, 116 F. Supp. 2d 322 (D. Conn. 2000) ..... 10

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ..... 7

*Christian v. Robinson-Humphrey Co.*, 957 F.2d 851 (11th Cir. 1992) ..... 3

*Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324 (S.D.N.Y. 2003) ..... 7

*Cooper v. MRM Investment Co.*, 367 F.3d 493 (6th Cir. 2004) ..... 10

*Deputy v. Lehman Bros., Inc.*, 374 F. Supp. 2d 695 (E.D. Wis. 2005) ..... 3

*Durkin v. Cigna Property & Cas. Corp.*, 942 F. Supp. 481 (D. Kan. 1996) ..... 3

*Gonzalez v. Toscorp., Inc.*, 1999 U.S. Dist. LEXIS 12109 (S.D.N.Y. Aug. 5, 1999) ..... 10

*Independent Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184 (S.D.N.Y. 1996) ..... 9

*McMahon v. Hodges*, 382 F.3d 284 (2d Cir. 2004) ..... 9, 10

*Medical Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d 345 (10th Cir. 1973) ..... 3

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*, 88 F.3d 129 (2d Cir. 1996) ..... 4

*N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112 (2d Cir. 2001) ..... 6

*Newman v. Hooters of America, Inc.*, 2006 WL 1793541 (M.D. Fla. June 28, 2006) ..... 4

*Ottawa Office Integration, Inc. v. FTF Business Sys., Inc.*, 132 F. Supp. 2d 215 (S.D.N.Y. 2001) ..... 9

*Ottley v. Sheepshead Nursing Home*, 688 F.2d 883 (2d Cir. 1982) ..... 8

*Overstreet v. Contigroup Cos., Inc.*, 462 F.3d 409 (5th Cir. 2006) ..... 7

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42 (2d Cir. 1993) ..... 4

*Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191 (S.D.N.Y. 2006) ..... 8

*Russell-Stanley Holdings, Inc. v. Buonanno*, 327 F. Supp. 2d 252 (S.D.N.Y. 2002) ..... 10

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE(S)

*Seabury Const. Corp. v. Dist. Council of N.Y.*, 461 F. Supp. 2d 193 (S.D.N.Y. 2006) ............................................................................................................................ 7

*Stotter Div. of Graduate Plastics Co., Inc. v. District 65*, 991 F.2d 997 (2d Cir. 1993) ............................................................................................................................ 8

*Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688 (S.D.N.Y. 1966) .................................. 2

*Tilton v. Prudential-Bache Securities, Inc.*, 1987 WL 4704 (S.D.N.Y. Mar. 24, 1987) ............................................................................................................................ 4

*Unique Woodworking, Inc. v. N.Y.C. Dist. Council of Carpenter's Pension Fund*, 2007 U.S. Dist. LEXIS 88342 (S.D.N.Y. Nov. 30, 2007) .......................................... 8

*U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813 (2d Cir. 1996), *cert. denied*, 521 U.S. 1120 (1997) ............................................................................................. 2, 4

*Valdes v. Swift Transp. Co., Inc.*, 292 F. Supp. 2d 524 (S.D.N.Y. 2003) ............................... 7, 11

Defendant eTelecare Global Solutions-US, Inc. ("eTelecare"), by its attorneys, Littler Mendelson, P.C., respectfully submits this reply memorandum of law in further support of its motion to compel arbitration or, in the alternative, strike Plaintiff's demand for a jury trial.

## SUMMARY OF ARGUMENT

Plaintiff's opposition arguments cannot overcome the undisputed and dispositive fact that Plaintiff expressly agreed, in writing, to arbitrate the claims in this action. Specifically, he executed and returned to eTelecare the following arbitration provision:

> **The Company and I mutually consent to the resolution by arbitration of all claims** or controversies ("claims"), past, present or future, whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company....
> **The claims covered by this Agreement include, but are not limited to, claims for wages and other compensation due**....

(Scully Dec., ¶ 8, Exh. F) (emphasis supplied). Plaintiff's acceptance of this arbitration provision manifested his clear and unmistakable intent to arbitrate, and constitutes a fully-expressed and enforceable agreement to arbitrate his claims. Nothing more need be considered by the Court.

Plaintiff does not, and cannot, dispute the authenticity or content of the consent to arbitrate he signed and submitted to eTelecare. Instead, he now attempts to renege on his commitment by raising red herrings about missing pages of the Agreement, without any suggestion of how those pages alter the arbitration provision to which he indisputably agreed. Plaintiff's position is erroneous as a matter of law. To compel arbitration, all that is required is evidence that the parties agreed to arbitrate the claims at issue. eTelecare has undeniably produced such evidence in the form of an arbitration provision

signed by Plaintiff that expressly covers his claims for "compensation due." The FAA mandates that covered claims be submitted to arbitration.

**ARGUMENT**

I.  **THE ARBITRATION PROVISION SIGNED AND SUBMITTED BY PLAINTIFF, STANDING ALONE, CONSTITUTES A VALID AND BINDING AGREEMENT TO ARBITRATE**

As discussed, Plaintiff does not dispute that he executed and returned to eTelecare an arbitration provision stating, in relevant part, that: **"The Company and I mutually consent to the resolution by arbitration of all claims ... for wages and other compensation due....** (Scully Dec., ¶ 8, Exh. F) (emphasis supplied).

Despite the clear and unequivocal nature of Plaintiff's agreement to arbitrate the very claims brought in this action (which are based on an alleged failure to pay commissions), Plaintiff now seeks to avoid his explicit agreement by asserting that eTelecare's inability to produce the precise complete document somehow negates his clearly-expressed intent to arbitrate. However, neither the FAA nor state law requires a party seeking to compel arbitration to produce the complete document in which the arbitration provision is contained. All that is required to compel arbitration is evidence that the parties agreed to arbitrate the claim at issue. *See, e.g., U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813, 816 (2d Cir. 1996) (arbitrability of dispute under FAA "hinges only on whether there is an agreement to arbitrate and, if so, whether the dispute falls within that agreement."), *cert. denied*, 521 U.S. 1120 (1997); *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 691 (S.D.N.Y. 1966) ("The question is not whether the parties, like the scrivener of old, followed some talismanic formula, but whether they manifested a mutual intent to arbitrate disputes arising out of the contracts.").

Thus, as long as the moving party is able to produce a written *provision* within an agreement, and that provision evidences the parties' agreement to arbitrate the claim, the FAA mandates arbitration. *See* 9 U.S.C. § 2 ("A written *provision* in any ... contract ... to settle by arbitration a controversy ... shall be valid, irrevocable, and enforceable....") (emphasis supplied). *See also, e.g., Christian v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992) ("*[A]n arbitration provision within a contract admittedly signed by the contractual parties is sufficient* to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract *in general*.") (internal citation omitted, second emphasis in original); *Deputy v. Lehman Bros., Inc.*, 374 F. Supp. 2d 695, 700-01 (E.D. Wis. 2005) (compelling arbitration despite movant's failure to produce complete agreement where available evidence established that "the arbitration *provision* was in contemplation of the parties, they intended to contract for it, and there was a meeting of the minds *on that term*.") (emphasis supplied). *Durkin v. Cigna Property & Cas. Corp.*, 942 F. Supp. 481, 487 (D. Kan. 1996) ("[I]t is not necessary that there be [an] integrated writing or that a party sign the writing containing the arbitration clause. All that is required is that the *arbitration provision* be in writing.") (quoting *Medical Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973)). As the court stated in *Durkin*:

> [T]he requirement of a writing is intended to permit enforcement of arbitration agreements only in the face of competent evidence of the agreement's existence and scope. Similar evidence regarding the underlying contract is not necessary to the fulfillment of that purpose. Accordingly, the written policy at issue here satisfies the statute's literal requirements and the apparent attendant evidentiary concerns.

942 F. Supp. at 487.

3

Here, eTelecare has produced unrefuted evidence that Plaintiff signed and submitted an arbitration provision that: (i) clearly and unequivocally expressed his agreement to arbitrate; and (ii) clearly and unequivocally provided that the very claims asserted in this action (*i.e.*, for "wages and other compensation due") are within the scope of the arbitration provision. Where, as here, there is undisputed evidence of a written arbitration provision, and that the claims at issue are within its scope, those claims must be submitted to arbitration. *See U.S. Fire Ins. Co.*, 101 F.3d at 816; *Nat'l Union Fire Inc. Co. of Pittsburgh v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996); *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 45 (2d Cir. 1993).

Plaintiff has cited no authority supporting his assertion that eTelecare's inability to produce other pages of the contract negates his clearly expressed, written agreement to arbitrate contained in the existing pages. The only cases cited by Plaintiff are ones in which the party seeking to compel arbitration failed to produce *the arbitration provision itself*, and, therefore, was unable to provide any evidence that there had been an agreement to arbitrate in the first instance. *See Tilton v. Prudential-Bache Securities, Inc.*, 1987 WL 4704 (S.D.N.Y. Mar. 24, 1987) (moving party failed to produce "the page on which the arbitration clause is allegedly found."); *Newman v. Hooters of America, Inc.*, 2006 WL 1793541 (M.D. Fla. June 28, 2006) (moving party failed to produce the arbitration agreement itself). Here, however, eTelecare has produced not only the arbitration provision to which Plaintiff agreed, but also Plaintiff's signature evincing his

intent to be bound. (Scully Dec., ¶ 8, Exh. F.) Thus, the authorities cited by Plaintiff are inapposite.[1]

Plaintiff makes two primary arguments as to why he believes production of the entire contract is required before compelling arbitration, each of which is a red herring.

- First, Plaintiff asserts that he "must be shown the complete alleged agreement in order to be able to analyze what, if any, disputes the parties agreed to arbitrate and whether the instant dispute is among them." (Pl. Brf. at 6-7.) However, there is no need to review the complete agreement in order to determine whether the parties intended "the instant dispute" to be arbitrable. The very first page of the Agreement (which Plaintiff admits he executed and returned to eTelecare) expressly and unequivocally states that disputes regarding "wages and other compensation due" are within the scope of the parties' arbitration agreement: "The claims covered by this Agreement include, but are not limited to, claims for wages and other compensation due...." (Scully Dec., ¶ 8, Exh. F.) Thus, it is beyond cavil that the parties' arbitration agreement covers the claims in this lawsuit, which are for "wages and other compensation due," *i.e.*, unpaid commissions. (*See* Complaint, ¶ 1 ("This is an action for willful failure to pay employment wages in the form of sales commissions.")).

Plaintiff's reliance on an unrelated, later reference to "claims excluded elsewhere in this Agreement" is unavailing. (Pl. Brf. at 7.) That phrase modifies only the last item in the series of examples of claims covered: "...and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded

---

[1] Plaintiff's contention that eTelecare utilized different arbitration agreements over the years, and that most employees had no arbitration agreement at all, is immaterial. Whether the company used different forms of agreement or required most employees to sign them is irrelevant to whether *Plaintiff* entered into an agreement to arbitrate the claims in this action. He indisputably did. (Scully Dec., Exh. F.)

5

elsewhere in this Agreement." (Scully Dec., ¶ 8, Exh. F.) It does not modify the earlier, unequivocal statement that "claims for wages or other compensation due" are "covered by this Agreement." (Id.) It would make no sense and would be contrary to any logical rule of construction to conclude that eTelecare, after expressly and unequivocally stating that such claims are covered by the arbitration provision, would *exclude* those very same claims from arbitration elsewhere in the Agreement. *See, e.g., N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 125 (2d Cir. 2001) (under New York law, courts will refuse to interpret a contractual term in such a way as to nullify other provisions).

- • Second, Plaintiff contends that he must be able to review the complete Agreement in order to determine whether he has any contractual defenses, such as unconscionability. (Pl. Brf. at 6-7.) However, Plaintiff has no evidence, nor has he even alleged, that eTelecare is seeking to enforce any unconscionable terms.[2] eTelecare has offered (consistent with the terms of its arbitration agreements with other employees) to conduct the arbitration in New York according to the employment arbitration rules and procedures of the American Arbitration Association or JAMS. (Def. Mov. Brf. at 8-9; Scully Dec., ¶¶ 5, 9, 11, Exh. C; Marks Dec., Exh. C.)[3] Absent evidence that eTelecare is seeking to impose unconscionable terms, or that it has ever utilized an arbitration agreement containing unconscionable terms, Plaintiff's contention that his arbitration agreement might be unconscionable is purely unsupported speculation.

---

[2]   Indeed, Plaintiff does not contend that any of the terms of any of the arbitration agreements utilized by eTelecare would be "unconscionable" if applied to him.

[3]   eTelecare also has offered to negotiate in good faith regarding the procedural aspects of the arbitration, an offer that Plaintiff has thus far rejected in violation of his common law duty of good faith and fair dealing. (Def. Mov. Brf. at 9.)

6

Further, there is no support whatsoever for Plaintiff's conclusory assertion that the "missing" pages of the Agreement might reveal a failure of consideration. It is undisputed that Plaintiff's employment by eTelecare was contingent upon him agreeing to arbitrate. (Scully Dec., Exh. A.) Employment constitutes valid consideration for an arbitration agreement. *Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003); *Valdes v. Swift Transp. Co., Inc.*, 292 F. Supp. 2d 524, 530-31 (S.D.N.Y. 2003). Thus, as a matter of law, there was no failure of consideration. *Id.*[4]

In any event, to the extent Plaintiff would seek to attack the validity of the entire agreement (as opposed to the arbitration clause itself, which he does not challenge), those issues must be decided by an arbitrator, not the Court. It is well-established that challenges to the validity of a contract containing an arbitration clause, rather than specifically to the arbitration clause itself, are subject to arbitration. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("[A]n arbitration provision is severable from the remainder of the contract [and] unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002) (same); *Overstreet v. Contigroup Cos., Inc.*, 462 F.3d 409, 411 n.1 (5th Cir. 2006) (once party has invoked contract's arbitration clause, validity of contract as a whole is to be determined by arbitrators, and federal courts are limited to reviewing arbitration clause itself). *See also Seabury Const. Corp. v. Dist. Council of N.Y.*, 461 F. Supp. 2d 193, 200 (S.D.N.Y. 2006) (once court determines parties have

---

[4] Likewise, there is no support for Plaintiff's speculation that there may have been a prior material breach or waiver by eTelecare, or a non-occurrence of a condition precedent. Plaintiff has not alleged any facts that would support even a colorable claim that eTelecare engaged in conduct sufficient to void Plaintiff's agreement to arbitrate.

agreed to arbitrate, validity and meaning of specific provisions within agreement to arbitrate is matter for arbitrator to decide); *Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191, 195 (S.D.N.Y. 2006) (unless challenge is to arbitration clause itself, issue of contract's validity is considered by arbitrator).

Here, Plaintiff does not dispute that he expressly agreed, in writing, to an arbitration clause requiring arbitration of the claims in this action for "wages or other compensation due" (*i.e.*, unpaid commissions). The defenses that Plaintiff speculates he might have go to the contract as a whole, not the arbitration clause itself, and, therefore, are themselves subject to arbitration. Moreover, as discussed in eTelecare's initial moving brief (p. 7), to the extent the arbitration provision does not contain specific arbitration procedures and the parties are unable to agree on such procedures, the issue of what procedures are to be used is also one for the arbitrator rather than the Court. *See Unique Woodworking, Inc. v. N.Y.C. Dist. Council of Carpenter's Pension Fund*, 2007 U.S. Dist. LEXIS 88342, *21 (S.D.N.Y. Nov. 30, 2007) ("It is long settled that procedural matters of arbitration are to be determined by the arbitrator"). *See also Stotter Div. of Graduate Plastics Co., Inc. v. District 65*, 991 F.2d 997, 1001 (2d Cir. 1993) (arbitration procedure is a matter for the arbitrator); *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 890 (2d Cir. 1982) (same).[5]

As a final note, it is Plaintiff -- not eTelecare -- who asks this Court to depart from established precedent under the common law of contracts and the FAA and create "bad law." By Plaintiff's rationale, even when a party admits entering into a contract, he still can disregard those obligations whenever the other party's copy of the contract is

---

[5] Further, Plaintiff does not dispute that, in the event the parties cannot agree on an arbitrator, the FAA empowers the Court to appoint one. 9 U.S.C. § 5. *See also Acequip Ltd. v. American Eng. Corp.*, 315 F.3d 151, 157 (2d. Cir. 2003).

8

destroyed by natural or man-made disaster, lost through theft, or simply mislaid.[6] A complete original document might be the best evidence of a contract, but it is not the only evidence of a contract. And here, the record firmly establishes that Plaintiff contracted with eTelecare (through offer, acceptance, and consideration) to resolve any compensation disputes through arbitration.

## II. THE 2006 INCENTIVE BONUS PROGRAM DOCUMENT DID NOT TERMINATE THE PARTIES' ARBITRATION AGREEMENT

Plaintiff's contention that an incentive bonus program document issued in 2006 terminated his 2004 arbitration agreement is frivolous. The bonus program document, by its express terms, applies solely to incentive compensation, and does not purport to alter all pre-existing agreements on any topic whatsoever. (Jakab Dec., Exh. C) ("eTelecare is implementing *the following* new 2006 incentive bonus program....") (emphasis supplied). It was obviously intended to supersede prior plans or individual agreements regarding commissions, bonuses, and other incentive compensation. (*Id.*) There is absolutely no evidence or basis for concluding that it was intended to terminate the parties' existing arbitration agreement. *See, e.g., Ottawa Office Integration, Inc. v. FTF Business Sys., Inc.*, 132 F. Supp. 2d 215, 219 (S.D.N.Y. 2001) (merger clause only applicable to prior agreements on same subject matter); *Independent Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184, 1196 (S.D.N.Y. 1996) (same).

## III. THE JURY TRIAL WAIVER IS VALID AND ENFORCEABLE

It is well-settled that the right to a trial by jury can be waived if done so knowingly and voluntarily. *See, e.g., McMahon v. Hodges*, 382 F.3d 284, 291 (2d Cir.

---

[6] Interestingly, Plaintiff does not explain what he did with his copy of the arbitration agreement, why he failed to fax the entire document back to eTelecare, or why he would sign a document if he did not receive all of its pages.

9

2004); *Russell-Stanley Holdings, Inc. v. Buonanno*, 327 F. Supp. 2d 252, 257 (S.D.N.Y. 2002).

Here, Plaintiff does not dispute that he read, signed, and returned to eTelecare an express and unambiguous waiver of his right to a jury trial. (Scully Dec., Exh. F) ("I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL."). Further, Plaintiff does not dispute that he understood what his jury trial waiver meant. (Pl. Brf. at 14-16.) Plaintiff's sole defense to enforcement of his waiver is that he felt he had "no meaningful choice but to sign" because it was a condition of his employment with eTelecare. However, jury trial waivers (in the form of arbitration agreements) that are entered into as a condition of employment have repeatedly been upheld as voluntary because employees are free to reject that condition and work elsewhere. *See, e.g., Ahing v. Lehman Bros.*, 2000 U.S. Dist. LEXIS 5175, *20-21 (S.D.N.Y. Apr. 20, 2000) (fact that plaintiff was required to sign arbitration agreement in order to "keep her job" does not constitute lack of meaningful choice); *Gonzalez v. Toscorp., Inc.*, 1999 U.S. Dist. LEXIS 12109, *7-8 (S.D.N.Y. Aug. 5, 1999) (fact that employee is compelled to accept arbitration clause as condition of employment does not establish unconscionability); *Arakawa v. Japan Network Group*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) (same); *Bolduc v. Bridgestone/Firestone, Inc.*, 116 F. Supp. 2d 322, 324 (D. Conn. 2000) (plaintiff cannot show absence of meaningful choice since he was free to leave job rather than sign arbitration agreement).[7] *See also McMahon*, 382 F.3d at 291 (party may bargain away

---

[7] An agreement to arbitrate is tantamount to a jury trial waiver, and the same considerations of voluntariness apply in assessing their validity, *i.e.*, whether the waiving party lacked a meaningful choice. *See, e.g., Cooper v. MRM Investment Co.*, 367 F.3d 493, 505 (6th Cir. 2004) (loss of right to jury trial is necessary and obvious consequence of agreement to

right to jury trial in order to receive something of value otherwise unavailable to him [*e.g.*, employment].)[8] Accordingly, Plaintiff's jury trial waiver was knowing, voluntary, and enforceable.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Defendant's moving brief, Defendant respectfully requests that the Court: dismiss or stay this action in its entirety and compel Plaintiff to submit his claims to arbitration; alternatively, strike Plaintiff's demand for a jury trial; and grant Defendant such other or further relief as the Court deems appropriate.

Date:     New York, New York          Respectfully submitted,
          July 16, 2008

                                      By: ____/s/_____
                                          Andrew P. Marks (AM-0361)
                                          Deke W. Bond (DB-0349)
                                          LITTLER MENDELSON, P.C.
                                          885 Third Avenue, 16th Floor
                                          New York, New York 10022-4834
                                          (212) 583-9600
                                          Attorneys for Defendant

---

arbitrate); *Valdes*, 292 F. Supp. 2d at 531 (party who enters into arbitration agreement is deemed to have thereby waived right to jury trial). Therefore, *a fortiori*, under the above authorities, an express jury trial waiver is voluntary even if entered into as a condition of employment.

[8] Even if conditioning employment on the execution of a jury trial waiver could render the waiver involuntary, Plaintiff has provided no evidence, only his counsel's conclusory assertion, that the waiver was "non-negotiable." Plaintiff does not allege that anyone at eTelecare ever told him that the jury trial waiver was non-negotiable, nor does Plaintiff allege that he ever attempted to negotiate that term. Rather, he read, understood, agreed to, and executed the waiver without comment or objection. Further, Plaintiff acknowledges that eTelecare did not require the waiver from all employees.