**MANDATE**

SDNY/NY NY
08-CV-1115
SULLIVAN

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: OCT 1 5 2009

08-5903-cv
Dreyfuss v. Etelecare Global Solutions-US Inc.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO SUMMARY ORDERS FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. IN A BRIEF OR OTHER PAPER IN WHICH A LITIGANT CITES A SUMMARY ORDER, IN EACH PARAGRAPH IN WHICH A CITATION APPEARS, AT LEAST ONE CITATION MUST EITHER BE TO THE FEDERAL APPENDIX OR BE ACCOMPANIED BY THE NOTATION: "(SUMMARY ORDER)." A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF THAT SUMMARY ORDER TOGETHER WITH THE PAPER IN WHICH THE SUMMARY ORDER IS CITED ON ANY PARTY NOT REPRESENTED BY COUNSEL UNLESS THE SUMMARY ORDER IS AVAILABLE IN AN ELECTRONIC DATABASE WHICH IS PUBLICLY ACCESSIBLE WITHOUT PAYMENT OF FEE (SUCH AS THE DATABASE AVAILABLE AT HTTP://WWW.CA2.USCOURTS.GOV/). IF NO COPY IS SERVED BY REASON OF THE AVAILABILITY OF THE ORDER ON SUCH A DATABASE, THE CITATION MUST INCLUDE REFERENCE TO THAT DATABASE AND THE DOCKET NUMBER OF THE CASE IN WHICH THE ORDER WAS ENTERED.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 21st day of September, two thousand and nine.

Present:  RALPH K. WINTER,
          ROSEMARY S. POOLER,
          ROBERT A. KATZMANN,
                    Circuit Judges.

FILED SEP 21 2009

---

JAMES DREYFUSS,

               Plaintiff-Appellee,

-v-                                                          08-5903-cv

ETELECARE GLOBAL SOLUTIONS-US INC.,
               Defendant-Appellant.

---

Appearing for Plaintiff-Appellee:     Peter Jakab, Fein & Jakab, New York, NY.

Appearing for Defendant-Appellant:    Michael Pappas, Littler Mendelson, P.C., New York, NY.

Appeal from the United States District Court for the Southern District of New York (Sullivan, J.).

ISSUED AS MANDATE:  OCT 1 3 2009

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of said District Court be and it hereby is **AFFIRMED.**

Plaintiff-appellant eTelecare Global Solutions-US Inc. ("TGS") appeals from the memorandum and order, dated November 13, 2008, of the United States District Court for the Southern District of New York (Sullivan, J.), which denied TGS's motion to compel arbitration. This Court has jurisdiction to hear TGS's appeal because, pursuant to Section 16 of the Federal Arbitration Act ("FAA"), 9 U.S.C. Section 16(a)(1)(B), an immediate appeal may be taken from an order denying a motion to compel arbitration.

According to his complaint, which asserts diversity of citizenship as a basis for federal jurisdiction, James Dreyfuss is a citizen of New York and TGS is a Delaware corporation with its principal place of business in Arizona. For slightly over three years, beginning in March 2004, Dreyfuss worked as a salesman for TGS. TGS salesmen were compensated by commission, but commissions were not paid until the client account obtained by the salesman actually began to generate revenue for TGS, something which generally took upwards of two years. The gravamen of Dreyfuss's complaint is that, in April 2007, just as certain of the accounts he had obtained for TGS were on the verge of generating revenue, he was terminated and payment of commissions allegedly due to him was refused.

Prior to answering the complaint, TGS filed a motion to compel arbitration based upon an arbitration agreement which Dreyfuss signed as a condition of his employment. A problem immediately became apparent in that the copy of the agreement submitted by TGS to the district court in support of its motion is obviously not a copy of the original agreement. The last page is signed by Dreyfuss, but the text on the preceding page stops in the middle of a sentence which is not completed on the last page. And, although Dreyfuss does not dispute that he signed an arbitration agreement upon being employed by TGS, TGS acknowledges that it could not locate a complete copy of the arbitration agreement which Dreyfuss signed.

What TGS has been able to locate is the aforementioned signature page and the first page of an arbitration agreement which contains a fax line indicating that it was sent from Dreyfuss in New York. This first page states that "the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement," but that, to the extent that the FAA "is inapplicable, California law pertaining to agreements to arbitrate shall apply." The first page also contains a broad arbitration clause which covers "all claims or controversies [] past, present or future, whether or not arising out of my employment (or its termination)," and which further specifically states that it covers "claims for wages or other compensation due." The next paragraph contains the following language, which completes the first page: "Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action . . . in any way related to any claim covered by this . . . ." Of course, because no second page has been produced, it is not clear in what way or ways the agreement signed by Dreyfuss "otherwise provided."

In the course of further discovery ordered by the district court, TGS was able to produce at least three types of documents containing arbitration agreements, which had been signed by TGS employees during the period of Dreyfuss's employment, but no single standard document

2

containing an arbitration clause. Based upon this discovery, Judge Sullivan denied TGS's motion to compel arbitration, holding that the demonstrable differences among the several agreements in the record established that TGS "has not met its burden of proving the existence of a valid arbitration agreement" between itself and Dreyfuss.

"We review the district court's determination of the arbitrability of [Dreyfuss's] claim de novo, while accepting the court's factual determinations unless clearly erroneous." Garten v. Kurth, 265 F.3d 136, 141-42 (2d Cir. 2001). Further, "the ultimate question of whether the parties agreed to arbitrate is determined by state law." Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002). The parties do not dispute that New York law is controlling.

TGS declares that "federal arbitration policy . . . demands that arbitration clauses be interpreted as broadly as possible, that there be a presumption of arbitrability, and that any doubts or ambiguities be resolved in favor of arbitration." It then asserts that the application of this policy in the instant case would center on the fact that "[o]n the very first page of the arbitration agreement [Dreyfuss signed, he] expressly agreed to arbitrate claims for 'wages and other compensation due.'" According to TGS, this is all that is needed to compel arbitration here because "under any reasonable reading of the agreement, Dreyfuss's claims for failure to pay commission are arbitrable," and "there is absolutely no basis for concluding that the missing pages contained a contradictory provision nullifying the express inclusion of claims for 'wages and other compensation due.'" The fact that the two pages of the agreement signed by Dreyfuss in the record do not set forth terms "such as the [arbitral] forum, the identity of and method for selecting arbitrators, apportionment of fees, arbitration procedures, choice of law, and the like" is of no moment because these are "non-essential terms."

But this is not the law. It is true that, when considering the question of whether a particular dispute falls within the coverage of an arbitration agreement, a court should be guided by the principle that, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). But the issue in this case is not whether Dreyfuss's claims for unpaid commissions fall within the scope of the arbitration clause set forth on the first page of the contract he signed; the issue is whether the two pages of that agreement which are in the record are sufficient to constitute an enforceable agreement. And this issue is governed by the principles of contract law and not merely, as TGS asserts, on an "inquiry" into "whether the parties have, anywhere in their agreement, evidenced an intent to arbitrate certain claims." That is, "the purpose of Congress [in enacting the FAA] in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967) (emphasis added). Accordingly, "though the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute." Opals on Ice Lingerie v. Body Lines Inc., 320 F.3d 362, 369 (2d Cir. 2003).

Further, while the case is not cited by the district court, nor by the parties on this appeal, we believe that Opals on Ice settles the question of whether an enforceable contract exists. In that case, two firms, Opals and Bodylines, engaged in negotiations to enter into a joint venture.

The firms faxed various documents containing arbitration clauses between each other, but, in the end, the two firms had not both signed a single document which contained a full compliment of agreed upon arbitration procedures. Id. at 365-66.

Although "Bodylines and Opals never consummated a working relationship," id. at 366, Opals later came to believe that Bodylines had appropriated some of its product designs. Opals therefore commenced an arbitration proceeding in New York, which Bodylines contended was invalid, and Opals filed suit in the Southern District seeking a declaratory judgment that its claims against Bodylines were arbitrable. Id. at 366-67. The district court thereupon granted Bodylines' motion for summary judgment.

On appeal, Opals made an argument that is identical to the one TGS makes in the instant case. Opals could not produce any single document containing an arbitration clause which had been signed by itself and Bodylines. But "[a]ccording to Opals, it does not matter that there is no valid contract signed by both parties; Opals signed one contract calling for arbitration, and Bodylines signed another. Taken in conjunction, and in light of the strong presumption in favor of arbitration, Opals contends, these documents show that each party agreed to arbitration." Id. at 371. We flatly rejected this argument:

> This argument fails because it is clear from the record that there was no meeting of the minds, and no contract was ever formed.
>
> > Under New York contract law, the fundamental basis of a valid enforceable contract is a meeting of the minds of the parties. If there is no meeting of the minds on all essential terms, there is no contract. This is because an enforceable contract requires mutual assent to essential terms and conditions thereof.
>
> Schurr v. Austin Galleries of Ill., 719 F.2d 571, 576 (2d Cir. 1983) (internal citations and quotation marks omitted). The documents drafted and signed by Opals each call for arbitration in New York, governed by New York law. The only documents undisputably signed by Bodylines which contain an arbitration clause – the 11/97 Addendum and the 12/97 Addendum – each call for arbitration in California, governed by California law. <u>This difference is significant and indicates that there was no meeting of the minds as to an agreement to arbitrate</u>.

Id. at 371-72 (emphasis added).

It is therefore not correct that because the record indicates that both Dreyfuss and TGS have expressed an intention to arbitrate, "the mere fact that provisions setting forth specific arbitration procedures are now missing does not render the parties' agreement to arbitrate unenforceable." It is undisputed that TGS cannot demonstrate Dreyfuss's assent to an entire

4

range of matters relevant to the conduct of arbitration proceedings. According to Opals on Ice, this lack of assent is "significant" and establishes that TGS cannot meet its burden of showing that the meeting of the minds necessary for the existence of an enforceable contract took place. Thus, Dreyfuss is entirely correct that TGS's "suggestion that the Court simply enforce the two-page fragment as though it were the full document runs afoul of basic contract principles."

Moreover, under New York law a party seeking to enforce a contract must prove not only the existence of the contract, but also its terms. See, e.g., Allied Sheet Metal Works, Inc. v. Kerby Saunders, Inc, 619 N.Y.S.2d 260, 263 (1 Dept. 1994) ("The party seeking to enforce a contract bears the burden to establish that a binding agreement was made and to prove the terms of the contract.") Thus, even if a contract did exist in this case, that agreement is not enforceable because TGS, as the party seeking enforcement, has failed to prove its terms.

Finally, TGS's contention that this Court should remand this case so the district court can hold a trial at which "[t]he parties can present oral testimony to prove the contents of the Agreement's missing pages" is baseless. As Dreyfuss argues, TGS "made no offer of testimony or other proof [to the district court] or other proof requiring a 'trial' and never requested one below." On this appeal, TGS similarly makes no offer of specific proof beyond mere speculation that oral testimony can fill in the very considerable blanks at issue here.

For the foregoing reasons, the order of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By: *[signature]*

A TRUE COPY
Catherine O'Hagan Wolfe, Clerk
by *[signature]* Margaret
DEPUTY CLERK